**In re Henryk BOBA, Debtor.**

**Henry L. Rogers, Plaintiff,**

v.

**Henryk Boba, Defendant.**

**Bankruptcy No. 02–B–00532.
Adversary No. 02–A–00174.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 16, 2002.

431

Jody A. Lowenthal, Hinsdale, IL, for Plaintiff.

Mary C. Fahey, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Creditor–Plaintiff Henry Rogers ("Creditor") filed the instant adversary, objecting to Debtor–Defendant Henryk Boba's ("Debtor") discharge under §§ 727(a)(2)(A)

and 727(a)(4)(A).[1] Plaintiff has moved for summary judgment. Both parties have complied with Local Rules 402 M and N.

*Undisputed Facts*

1. Henryk Boba is the Debtor herein [Bankruptcy Petition and admission in "Debtor's Response To Section 727 Objection To Discharge", Paragraph 2].

2. Henry Rogers is a creditor of Henryk Boba [ (a) admission in "Debtor's Response To Section 727 Objection To Discharge", Paragraph 2; and (b) Debtor's Bankruptcy Petition and Schedules, listed as secured creditor on Schedule D, and Schedule H].

3. Henry Rogers filed this Adversary Complaint pursuant to Section 727 of the Bankruptcy Code [Paragraph 1 "Section 727 Objection To Discharge", admitted in "Debtor's Response To Section 727 Objection To Discharge" Paragraph 1].

4. In the spring and summer of 2001, Henryk Boba had discussions with Henry Rogers and his son, Terry Rogers, about Boba's financial problems [Affidavit "Exhibit C"].

5. That on September 13, 2001, Henryk Boba filed a Petition for Dissolution of Marriage as case number 01 D 0014423 in the Circuit Court of Cook County, Illinois ["Group Exhibit D" attached hereto and incorporated herein] showing "file stamp" date of September 13, 2001.

6. That on September 26, 2001, Henryk Boba obtained a Judgment For Dissolution of Marriage ["Exhibit All to the Adversary Complaint, Judgment of Dissolution of Marriage" incorporating the "Marital Settlement Agreement"].

A. Grazyna Boba [the ex-wife] was unrepresented in the divorce ["Exhibit A" to Adversary Complaint, "Judgment For Dissolution of Marriage" Page 1, first sentence, and "Marital Settlement Agreement", Paragraph G, page 2. attached to Judgment].

B. The divorce judgment awarded Grazyna Boba the marital residence commonly known as 2436 Clarke, River Grove, Illinois ["Exhibit A" to Adversary Complaint, "Judgment For Dissolution of Marriage", Page 6, Article Nine, ... "the real estate located at 2436 Clarke, River Grove, Illinois shall be awarded to Wife ..."].

C. The divorce judgment awarded Grazyna Boba [ex-wife] ownership of the brokerage accounts known as Financial CAFE.com and TD Waterhouse ["Exhibit A" to Adversary Complaint, "Judgment of Dissolution of Marriage", Page 5, Article Five, "The interests that Husband has in said accounts shall be awarded to Wife ...". Mary Fahey stated on the record, in open court on March 26, 2002, that the value of the brokerage accounts is in excess of $35,000].

D. The divorce judgment awarded Grazyna Boba [ex-wife] the 1998 Ford Windstar [listed on the Debtor's schedules as belonging to Henryk Boba] ["Ex-

---

**1.** (a) The court shall grant the debtor a discharge, unless—

(1)...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with *custody of property* under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed

(A) property of the debtor, within one year before the date of the filing of the petition;

...

(4) the debtor knowingly and fraudulently, in or in connection with the case

(A) made a false oath or account;

Title 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A)

hibit A" to Adversary Complaint, Page 6, Article Eight, "Wife shall be awarded to 1998 Ford Windstar . . .").

E. The divorce judgment awarded Grazyna Boba [ex-wife] a $50,000 life insurance policy ["Exhibit A" to Adversary Complaint, "Judgment For Dissolution of Marriage", Page 5, Article Four, "The Husband shall maintain a minimum of $50,000 life insurance policy on his life . . ."].

F. The divorce judgment awarded $1,500 per month child support and maintenance for three years to Grazyna Boba [ex-wife] ["Exhibit A" to Adversary Complaint, "Judgment For Dissolution of Marriage", Page 4, Article Three, "Husband shall pay to Wife $1500 per month . . . for three years".]

G. The divorce judgment awarded Henryk Boba an undeveloped lot in Cicero, Illinois valued on the Bankruptcy Petition and Schedules as being worth $20,000 with an outstanding mortgage on it in the amount of $60,000 ["Exhibit A" to Adversary Complaint, "Judgment For Dissolution of Marriage", Page 7, Article Nine, "Husband shall be awarded the undeveloped lot in Cicero, Illinois", values from Bankruptcy Schedules and Petition filed in Case No. 02 B 00532, Schedule A].

H. The divorce judgment awarded Henryk Boba 100% of the stock in Bright Windows and Doors, Inc.["Exhibit A" to Adversary Complaint, "Judgment For Dissolution of Marriage", Page 9, Article Thirteen, "The Husband shall be awarded 100% of the stocks and assets of the corporation known as Bright Windows and Doors, Incorporated . . ."].

7. That on October 1, 2001, Henryk Boba executed a quit claim deed to his ex-wife for the property commonly known as 2436 Clarke, River Grove, Illinois. The deed was recorded on October 12, 2001 ["Exhibit E" attached hereto and incorporated herein, prepared by Law office of Fahey & Associates].

8. On January 7, 2002, Henryk Boba filed a Voluntary Petition herein [Bankruptcy Petition Case No. 02 B 00532, Docket entry No.1].

9. That on the date of the filing of the bankruptcy herein, Henryk Boba listed his residence as 2436 Clarke, River Grove, Illinois [Bankruptcy Petition Case No. 02 B 00532].

10. The Divorce was a transfer of property to Grazyna Boba ["Exhibit A" to Adversary Complaint, "Judgment For Dissolution of Marriage" incorporating the "Marital Settlement Agreement", pages 4–9, Articles Three, Four, Five, Seven, Eight, Nine, and Thirteen].

11. The date of the divorce was within one year of the filing of this bankruptcy ["Exhibit A" to Adversary Complaint showing date Divorce Judgment entered was September 26, 2001 and date of filing of Bankruptcy Petition in Case No. 02 B 00532 being January 7, 2002, Docket entry No. 1].

12. Henryk Boba was insolvent on the date of the divorce [Affidavit "Exhibit C" to Motion For Summary Judgment, "Exhibit A" to Adversary Complaint showing transfers of property to Grazyna and retention of $60,000 in debt owed to Henry Rogers "Article Nine, Page 6–711," and Bankruptcy Petition and Scheduled filed in Case No. 02 B 00532 listing debt of Cicero lot as $60,000 with value of $20,000, and Summary of Schedules showing liabilities of $218,540 and assets of $27,637.99].

13. Henryk Boba on Schedule B, number 12, checked "none" in answer to the requirement of listing stocks owned [Schedule B attached to Petition in Case No. 02 B 005321].

14. Henryk Boba failed to schedule the transfers of (a) the insurance policy, (b) the two brokerage accounts [TD Waterhouse and CAFE.com] admitted to worth in excess of $35,000, and (c) the Ford Windstar in the divorce judgment in answer to Paragraph 10, on the "Statement of Financial Affairs" [Debtor's Petition and Schedules filed in Case No. 02 B 00532].

15. The law firm of Fahey & Associates represents the Debtor in this bankruptcy and also represented the Debtor in his divorce ["Exhibit A" to Adversary Complaint "Judgment For Dissolution of Marriage" and Bankruptcy Petition and Schedules filed in Case No. 02 B 00532].

16. That the law firm of Fahey & Associates had full knowledge of the contents of the divorce judgment when it prepared the Bankruptcy Petition and Schedules for Henryk Boba herein ["Exhibit A" to Adversary Complaint and Bankruptcy Petition and Schedules filed in Case No. 02 B 00532].

17. That the Debtor scheduled the 1998 Ford Windstar on his Petition and Schedules [Bankruptcy Petition and Schedules filed in Case No. 02 B 00532].

18. That on information and belief, the Debtor re-affirmed the debt owed on the 1998 Ford Windstar [Entry No. 8 on Docket in Case No. 02 B 00532].

19. That the Debtor scheduled on Schedule B, a life insurance policy [Bankruptcy Petition and Schedules filed in Case No. 02 B 00532].

20. On the Debtor s Statement of Financial Affairs in answer to Paragraph 4 a., "Suits and Administrative Proceedings, Executions, Garnishments and ·Attachments", the Debtor checked "None" [Statement of Financial Affairs filed herein in case No. 02 B00532].

21. On the Debtor's Statement of Financial Affairs in answer to Paragraph 15 "Prior Address of Debtor", the Debtor checked "None" [Statement of Financial Affairs filed herein in case No. 02 B 00532].

22. That although the Debtor is owner of 100% of the stock of "Bright Windows and Doors Inc.", he only listed on Bankruptcy Schedule I "Bright Windows and Doors Inc." as his "Employer", and his monthly income as "$4,137.17", but failed to file a Statement of Financial Affairs as a Debtor engaged in business i.e. [Official Form 7, definition "in business"; "Exhibit A" to the Adversary Complaint "Judgment For Dissolution of Marriage", Page 9, Article Thirteen; and Debtor's Petition and Schedules filed herein in case No.02 B 00532], thereby failing to disclose his ownership of the company.

23. Further undisputed facts are set forth in the discussion that follows.

### Discussion

■ The Debtor received out of the divorce only an undeveloped lot worth $20,000 subject to a $60,000 mortgage, plus the stock in his company.

Debtor transferred to his spouse his interest in his home, two brokerage accounts, a life insurance policy, and a Ford truck through agreement as part of a fast-track divorce (decree obtained within two weeks of filing), all done less than four months prior to his filing in bankruptcy. His wife was not represented in the divorce, from which it may be inferred that the transfers were collusive.

Debtor was insolvent when he filed in bankruptcy. He failed to schedule the transfers to the spouse and his 100% interest in his business Bright Windows and Doors, which he received in the divorce and which is his primary source of income. Debtor continued to use the Ford truck even after the divorce and continued to reside at the residence. Creditor also

points out that the same law firm that handled the divorce filed the bankruptcy petition.

Debtor responds that he did not know that the awards under the divorce decree were transfers under the Code, and that he inadvertently failed to list his business on his original schedules. Debtor has since amended his schedules to include the business. But he has valued the business at only $1,000 and has not scheduled any tools, inventory, or supplies. Plaintiff points out that the valuation is implausible for a business that had income of $47,435 in 1999 and $49,646 in 2000.

■ Fraud can rarely be established by direct evidence. *Matter of Krehl,* 86 F.3d 737, 743 (7th Cir.1996). Courts must look to the totality of circumstances in deciding whether a debtor acted with fraudulent intent. *Id.* The same badges of fraud that apply to cases under § 727(a)(2)(A) apply to analysis under § 727(a)(4)(A). *See In re Kaiser,* 722 F.2d 1574, 1582–83 (2nd Cir.1983) (listing badges of fraud). The transfer of property to one's spouse while insolvent is a classic badge of fraud. *Id.* Thus, an agreed transfer of property to a spouse through a fast-track divorce on the eve of bankruptcy is evidence of a fraudulent scheme to put the property beyond reach of creditors. *In re Chevrie,* 2001 WL 120132 at * 10 (Bankr.N.D.Ill.2001) (Sonderby, J).

A case similar to this was presented in *In re Chavin,* 150 F.3d 726 (7th Cir.1998), where the panel opinion upheld the grant of summary judgment under §§ 727(a)(2) and 727(a)(4)(A). In *Chavin* the opinion stated that a credibility issue involving the intent to defraud should normally be left for trial. However, in extreme cases where the explanation given is so implausible that a rational factfinder could not find for the debtor the court may enter sum-

mary judgment. *Chavin,* 150 F.3d at 728–29. Could a factfinder credit Debtor's statements for why he acted as he did? No. His explanations are utterly implausible. Just as in *Chavin,* Debtor here was a businessman who had to understand his responsibility to disclose accurately and fully the information requested on the bankruptcy schedules. Moreover, Debtor was advised by counsel who was aware of the divorce settlement and thus fully capable of advising him on the need to schedule the transfers in the bankruptcy. Debtor's counsel was responsible to know that such transfers were covered under the definition at 11 U.S.C. § 101(54).

■ Debtor's suggestion that Creditor was not harmed by his actions is of no moment, since § 727(a)(2)(A) does not require that the creditor suffer actual harm for the debtor to be denied the privilege of discharge. *Matter of Snyder,* 152 F.3d 596, 601 (7th Cir.1998); *Matter of Smiley,* 864 F.2d 562, 569 (7th Cir.1989). Creditor merely has to show by a preponderance of evidence under that provision that Debtor intended to defraud it. For purposes of the pending motion, Creditor must show that no reasonable factfinder would find for Debtor because his explanations are so implausible as to be unreasonable under the circumstances of the case. Creditor has met this burden.

■ Likewise, the explanations for not scheduling all assets of Debtor hold no water. Moreover, Debtor's amendment of his schedules does not bar denial of discharge. "The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive." *Payne v. Wood,* 775 F.2d 202, 205 (7th Cir.1985); *Mazer v. United States,* 298

F.2d 579, 582 (7th Cir.1962) (offense of false oath and false swearing cannot be avoided by amended schedule).

## CONCLUSION

Debtor's voluntary transfers of property to his spouse and failure to comply with reporting requirements in bankruptcy showed a deliberate intent to shield his assets from creditors. No reasonable fact-finder could decide that Debtor's acts and omissions lacked intent to defraud.

Therefore the Motion for Summary Judgment is allowed, and separate Final Judgment Order will be entered.