**In re Kenneth Eric COSTELLO, Debtor.**

**Clean Cut Tree Service, Inc., Plaintiff,**

**v.**

**Kenneth Eric Costello, d/b/a Century Tree Service, Defendant.**

**Bankruptcy No. 01–B–29191.
Adversary No. 01–A–01000.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 3, 2003.

Gary N. Foley (Law Offices of Mark L. Shaw), Lake Villa, IL, for Plaintiff.

Michael S. Danian (Law Offices of Michael S. Danian), for Defendant.

Joel A. Schechter (Grossman, Mitenmacher & Schechter), Chicago, IL, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding was tried on a two-count Complaint objecting to dis-

charge of the debtor, Kenneth Eric Costello ("Debtor" or "Defendant"), doing business as Century Tree Service ("Century Tree"), filed by the Plaintiff Clean Cut Tree Service, Inc. ("Clean Cut," "Creditor," or "Plaintiff"). Count I was dismissed by order entered December 17, 2002. Count II, pleaded under 11 U.S.C. § 727(a), sought to bar discharge under a number of theories. Following trial, the Court now makes and enters the following Findings of Fact and Conclusions of Law, pursuant to which judgment will separately enter denying a bankruptcy discharge.

## FINDINGS OF FACT

1. In or around 1982, the Debtor began operating a sole proprietorship called Century Tree Service which provided landscaping services and tree removal, cutting, stumping, and chipping in Lake County, Illinois. Dec. 31, 2002 Transcript at 34; Apr. 10, 2000 Dep. at 5. Although the Debtor testified that he launched his business in 1982, he indicated in the Statement of Financial Affairs section of his bankruptcy petition that he operated Century Tree from 1986 through 2001.

2. The Plaintiff creditor Clean Cut was in the business of removing trees, branches, and stumps and providing other landscaping services in Lake County, Illinois. Amended Compl. at 1–2, ¶ 2.

3. On January 11, 2001, a Lake County Illinois jury found in favor of Clean Cut and against the Debtor in the amount of $23,895 in a case entitled *Clean Cut Tree Services, Inc. v. Kenneth E. Costello*, No. 98 L 450, and judgment was entered on that verdict. *Id.* at 6–7, ¶ 1; Dec. 31, 2002 Transcript at 63–64; Pl. Exh. 5, Bankr. Pet., Sch. F.

4. Subsequent to entry of the judgment, Clean Cut served the Debtor with a Citation to Discover Assets. Pl. Exh. 5.

5. The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 20, 2001. Pl. Exh. 5, Bankr.Pet. Clean Cut was listed in Schedule F of the petition as a creditor holding an unsecured nonpriority claim. *Id.*, Sch. F. As a result of the bankruptcy proceeding, the Circuit Court for the Nineteenth Circuit in Lake County, Illinois, suspended the Citation proceeding.

6. The Debtor has owned various vehicles and pieces of equipment, which he used principally in his business. Those vehicles included Ford trucks, a Ford automobile, a "homemade" trailer, a boat trailer and row boat, and a GMC truck. Pl. Exh. 12, Amended Bankr.Pet., Sch. B. He also owned a stumper and a storage trailer, as well as some hand tools. *Id.* The total value of all of the foregoing property is $16,600. *Id.* In addition, the Debtor owned other vehicles and equipment, including a chipper, a Ford truck, a loader truck, a flatbed, two Chevy pickup trucks, an S–10 model pickup, a bucket truck, and a stump machine. All of that equipment was worth over $15,000, but none of it was included in Schedule B of his bankruptcy petition. Apr. 10, 2000 Dep. at 64–74; Amended Compl. at ¶ 11.

7. On February 1, 2001, the Debtor sold five of his vehicles and pieces of equipment, as well as his business telephone number and pager number for Century Tree, to Tony Rivera ("Rivera"), owner of a company called Timber King Tree Service ("Timber King"). Def. Exh. 9; Dec. 30, 2002 Transcript at 31; 2004 Exam at 68–69. In return, Rivera gave the Debtor $25,000 and agreed to give him an additional $8,000, a company car, and 10 percent commission on any new business that the Debtor brought in to Timber King. Dec. 30, 2002 Transcript at 31, 99; Dec. 31, 2002 Transcript at 55; 2004 Exam at 76–77, 105. Rivera still owes the Debt-

or money, but this debt was not listed on Schedule B on the bankruptcy petition.

8. Although the Debtor now claims that he has not sold the Century Tree Service business, he testified that the business was worth $50,000 as of April 2000, Apr. 10, 2000 Dep. at 105. However, Century Tree was not listed as an asset on Schedule B of the Debtor's bankruptcy petition.

9. With respect to real property, the Debtor's parents gave him a parcel of vacant land on Gages Lake Road ("Gages Lake property") in Grayslake, Illinois, in 1988. Pl. Exh. 16; Apr. 10, 2000 Dep. at 9, 10, 14. The Debtor and his wife sold the property for $200,000 in April 1997 to the Board of Education of Lake County. 2004 Exam at 33–34; Apr. 10, 2000 Dep. at 10, 19; Pl. Exh. 16. They received $164,273.07 as proceeds from the sale; each took half of the sale proceeds. 2004 Exam at 35; Pl. Exh. 16; Dec. 30, 2002 Transcript at 55; Dec. 31, 2002 Transcript at 7.

10. Subsequently, in February of 1998, Mrs. Costello used some of the money to purchase a home on Dartmoor Drive ("Dartmoor property") in Grayslake. Pl. Exh. 14; Dec. 30, 2002 Transcript at 54, 101; Dec. 31, 2002 Transcript at 35. The Debtor initialed each of the three pages of the mortgage. Dec. 31, 2002 Transcript at 49. He also signed a homestead waiver in January of 2001. *Id.*

11. The Debtor admitted that he "stays" at the Dartmoor Drive home with his children on the weekends when his wife goes out of town. Rule 2004 Deposition at 122.

12. During the operation of Century Tree, the Debtor deposited his business earnings into a single account that he maintained at Round Lake State Bank.

Dec. 31, 2002 Transcript at 24. Those earnings fluctuated from year to year.

13. Although he deposited checks he received for services rendered, the Debtor did not always deposit all of the money for jobs for which he was paid cash. Dec. 30, 2002 Transcript at 93.

14. The Debtor periodically withdraws money from this account to give to his wife, Phyllis Costello ("Mrs. Costello"), from whom he is separated, and to support his children. *Id.* at 82–83, 92–93; 2004 Exam at 23, 25. (During trial, the Debtor testified that he has three children, two of whom are under 18. At his 2004 Exam on December 7, 2002, however, he testified that he has four children to whom he provides financial support.) Mrs. Costello does craft work from her home but is not otherwise gainfully employed. Dec. 30, 2002 at 92–93.

15. The Debtor testified that the business records that he kept throughout his operation of Century Tree consisted of the statements and canceled checks that he received from his bank. *Id.* at 147–48. However, he admitted at trial that he also had four folders (for 1999, 2000, 2001, and 2002) about a foot-and-a-half thick with paid cash invoices and receipts that he did not produce when Plaintiff requested his business records. Dec. 31, 2002 Transcript at 86.

16. The Debtor did not maintain a ledger cataloging his customers or how much they paid. Dec. 30, 2002 Transcript at 129. Instead, he tracked income and expenses by using bank statements, canceled checks and retaining cash receipts. *Id.* at 81–82, 97, 130, 147–48; Dec. 31, 2002 Transcript at 70.

17. The Debtor kept all of his business records in a box in a hotel room where he lives. 2004 Exam at 16–17; Dec. 30, 2002 Transcript at 132.

18. Although he filed tax returns with the Internal Revenue Service until 1994, he has not filed U.S. tax returns since then. Dec. 30, 2002 Transcript at 77; Dec. 31, 2002 Transcript at 67–69. Nevertheless, the Internal Revenue Service was not listed as a creditor on Schedule E of the Debtor's bankruptcy petition.

19. The Debtor had one employee, as well as others who did work for him. Dec. 30, 2002 Transcript at 72. He did not pay withholding taxes for himself or his employees in 1998, 1999, 2000, 2001, or 2002. *Id.* at 73, 75–76.

20. The Debtor has not completed either a balance sheet or a profit-and-loss statement for the last ten years. *Id.* at 77.

21. On December 3, 2001, the Debtor signed an affidavit stating that he had no other records in his possession other than the ones that he turned over to Plaintiff's counsel. Dec. 31, 2002 Transcript at 99–101. However, he does not deny that he failed to produce all business and personal records. May 9, 2000 Dep. at 97; Dec. 30, 2002 Transcript at 155, 164.

22. The Debtor explained that his business records were not available because rodents ate them. *Id.*

23. In completing his bankruptcy petition, the Debtor wrote "None" when asked to describe and indicate the location of any real property. Pl. Exh. 5, Bankr.Pet., Sch. A.

24. On Schedule B of his amended bankruptcy petition, filed February 11, 2002, the Debtor stated that he also owned a GMC truck, valued at $5,500. Pl. Exh. 12, Amended Bankr.Pet., Sch. A.

25. On Schedule I of his bankruptcy petition, the Debtor showed that his total monthly take home pay for work as a cost estimator for Timber King is $800 and that his regular income from the operation of a business, beginning July 15, 2001, is $750

monthly, for a total of $1,550 of income per month. Pl. Exh. 5, Bankr.Pet., Sch. I.

26. On Schedule J of his petition, the Debtor stated that his total monthly expenses are $1,426. Pl. Exh. 5, Bankr.Pet., Sch. J.

27. In paragraph 18 of the Debtor's Statement of Financial Affairs, he stated that he had $25,000 worth of inventories as of February 2001. Pl. Exh. 5, Statement of Financial Affairs. On his amended petition, filed February 11, 2002, the Debtor deleted the inventory entry, leaving the space for item number 18 blank. Pl. Exh. 12, Amended Bankr.Pet.

28. In addition, the Debtor testified during trial that he did not disclose on his petition a payment of $1,950 received for previous work. Dec. 30, 2002 Transcript at 88.

29. *Citation to Discover Assets:*

A Citation to Discover Assets, issued and dated February 8, 2001, commanded the Debtor to appear on March 14, 2001. *See* Pl. Exh. 5. An affidavit indicates that abode service was made on March 8, 2001 at 8:05 a.m. *Id.* An Order and Rule to Show Cause were subsequently issued when the Debtor failed to appear. *Id.*

The Debtor claims that he did not get notice of the citation until August or September of 2001. Dec. 30, 2002 Transcript at 39. However, entry of the Rule to Show Cause reflected a finding by the state court judge that defendant had been served with the citation and did not appear to contest entry of the Rule. Defendant admits that he was served with the Order and Rule to Show Cause on August 3, 2001. *Id.* at 51. However, he denies Plaintiff's allegation that he used his truck to try to run over Patrick Kelly, the Vice President of Clean Cut, who had notified

the process server as to the Debtor's whereabouts. *Id.* at 52.

30. *Income Disclosures:*

The Plaintiff contends that the Debtor's testimony and schedules with respect to his income are inaccurate and inconsistent. Specifically, Clean Cut alleges that the Debtor failed to disclose fully his income for 2001 and 2002; that his business has earned $60,000 to $140,000 annually throughout the 1990s; and that the income figures on Schedule I of his Bankruptcy Petition are inaccurate. Amended Compl. ¶¶ 13–15, 21.

The Debtor does not deny these allegations. However, he maintains that figures provided in his answers to Interrogatories, in his Bankruptcy Petition, and in testimony were accurately arrived at by adding the deposit amounts from his bank statements. *See* Dec. 30, 2002 Transcript at 94. Specifically, he noted from those records that gross annual sales of Century Tree from 1996 to 2001 were as follows: $69,000 in 1996; $100,000 in 1997; $98,000 in 1998; $76,000 in 1999; $101,000 in 2000; and $26,000 in 2001. Dec. 30, 2002 Transcript at 94; Pl. Exh. 5, Interrogatories. He stated that the figure of $100,000 for 1997 reflects both the proceeds from the sale of the Gages Lake property (see below) and business income. Dec. 31, 2002 Transcript at 43–46. However, Defendant admitted that, because he did not deposit all of the cash he received for some jobs, he actually made more than the figures indicated on the Interrogatories. *Id.* at 94–95.

To explain the reason for the 2001 drop in income, the Debtor stated that he was injured in 1997 and was not able to work, and did not hire a substitute to perform work in his absence. Dec. 30, 2002 Transcript at 91–92. In subsequent testimony, he noted that he earned only $26,000 for 2001 because he was in Florida and did not

work for the first six months of the year. Dec. 31, 2002 Transcript at 20.

Plaintiff contends that the Debtor's figures do not correspond to the information provided on Schedule I of his Bankruptcy Petition. *See* Amended Compl. ¶ 15. On Schedule I, the Debtor indicated that his current monthly gross wages, salary, and commissions are $800 monthly (from Timber King Tree, Inc.); that his regular income from the operation of his business is $750 a month (beginning July 15, 2001) (from self employment and part-time hauling); and that his total monthly income is $1,550. *See* Pl. Exh. 5, Bankr.Pet., Sch. I and Statement of Financial Affairs. (Schedule J reflects that the Debtor's current expenses are $1,426 month.) However, he also testified that he sometimes made up to $800 a day in 2001 and that he performed at least fifteen snow removal jobs in December of that year, one of which paid $3,000. Dec. 30, 2002 Transcript at 41, 45; 2004 Exam at 84–86.

Further, the Creditor alleges specifically that the Debtor failed to fully disclose on his Bankruptcy Petition $30,000 of income that he testified to receiving in 2001. *See* Amended Compl. at ¶¶ 13, 21. The Debtor testified that he received this sum for clearing land and taking down trees for a job he referred to as Hidden Ponds. 2004 Exam at 65–66, 71. However, he later noted that the job paid "between 22 and 25,000." Dec. 30, 2002 Transcript at 116. According to the Debtor, the only deposit made in connection with the Hidden Ponds job was $15,000 on July 11, 2000. *Id.* at 117.

31. *Proceeds of the Sale of the Gages Lake Property:*

The parties dispute the sale proceeds of the Gages Lake property. *See* Amended Compl. at ¶ 19 and Def.'s Answer. Plaintiff contends that the Debtor has not accounted for these proceeds. Amended

Compl. at ¶ 19. The Debtor counters that his bank statements and receipts serve as written documentation as to use of the proceeds. Dec. 30, 2002 Transcript at 100.

The Debtor testified inconsistently as to those proceeds. Initially, he claimed that he invested the entire $164,000 in his business. *Id.* at 103; 2004 Exam at 35. Subsequently, he testified that the money was not deposited into his bank account for use in his business; later he stated that $75,000 went into the account and that he used the remaining $90,000 to buy equipment for Century Tree.2004 Exam at 36, 37, 118.

Finally, the Debtor asserted that he split the proceeds equally with his wife and that he deposited his half into his Century Tree account at the bank. Dec. 31, 2002 Transcript at 35, 37. When questioned as to why his bank statements did not reflect a deposit of $82,000 in April of 1997, the Debtor explained that he received several checks at closing, which he and his wife deposited as needed to pay their bills. *Id.* at 35–43. He stated that, as he had injured himself in 1997 and was unable to work, the only income that he had for the year were the proceeds from the sale of the Gages Lake property. *Id.* at 41–42. Accordingly, he claims to have deposited the checks as he needed them from April through December of 1997. *Id.* at 43. The Debtor never produced records showing such deposits.

32. *Transfer of Assets:*

With respect to the Debtor's sale of equipment and vehicles in February of 2001, the Plaintiff contends that the Debtor transferred his entire business to Rivera in exchange for $25,000, as well as an additional $8,000, a company car, and 10 percent commission. Plaintiff claims that the Debtor executed this transfer, which occurred while the Citation to Discover Assets was pending, to defraud the Plaintiff and other creditors, in violation of § 727(a)(2)(A) of the Bankruptcy Code, Title 11 U.S.C.

In response, the Debtor testified that he did not sell his business; instead, he merely sold some equipment. Dec. 30, 2002 Transcript at 31. Further, he claimed that he used the money received from Rivera to buy other pieces of equipment for use in Century Tree. *Id.* at 33. The Debtor maintained that the $25,000 was wired to an auction house in Florida. *Id.* at 35. However, he admitted that he has not produced any documentation, other than a statement in his own handwriting, to prove that he actually bought equipment with the money. *Id.* at 36–37.

As to the Dartmoor Drive property, Clean Cut alleges that the home is marital property, that the Debtor had an interest in that property, and that he transferred that interest to his wife with an intent to defraud or hinder creditors. As such, the Plaintiff claims that the transfer was a continuing concealment, in violation of § 727(a)(2)(A).

The Debtor alleges that he has no interest in the Dartmoor Drive house. Dec. 31, 2002 Transcript at 7. He testified that he initialed the mortgage only because his wife and the mortgage company told him to and that it was his understanding that he waived his marital interest in the property by initialing the document. *Id.* at 49. He acknowledged that he was married to his wife at the time she bought the property but maintains that he did not purchase the property with her. 2004 Exam at 38. Although he testified during his 2004 Examination that his wife refinanced the home on January 29, 2001, he subsequently denied that a refinancing had occurred on that date. Dec. 30, 2002 Transcript at 48. Instead, the Debtor explained that his wife entered into a rent-to-buy option

agreement and that she obtained a mortgage three years later, in 2001. Dec. 31, 2002 Transcript at 8.

33. *Business Records:*

The Plaintiff alleges that the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any records with respect to his financial affairs without providing an adequate justification. Accordingly, Clean Cut claims that the Debtor has violated § 727(a)(3) of the Bankruptcy Code. In support of its contentions, the Plaintiff noted that the Debtor has no business records, other than canceled checks and bank statements; has not paid taxes in over twelve years; and is unable to provide an explanation as to the lack of records other than to say that rodents ate them.

The Debtor claims that his bank statements and returned checks for the years 1999, 2000, and 2001 provide a reasonable basis on which to determine his financial condition. He also argues that the "cash receipts" that the Debtor failed to turn over to the Plaintiff are not relevant to the case. *See* Debtor's Amended Findings of Fact and Conclusions of Law at 17.

The Debtor acknowledged that the only records that he kept were bank statements and canceled checks and that rodents ate them over the years. Dec. 30, 2002 Transcript at 147–48, 164. He also noted that he put an expense description on the memo line of the checks that he wrote only when he needed an explanation; he conceded that such a description was included on only eight of the Two Hundred Fifty checks in evidence. Dec. 31, 2002 Transcript at 75. Further, the Debtor admitted that he has no proof of income that he received that was not deposited into his bank account. *Id.* at 173–75. The Debtor made a number of other admissions at trial as well, including a concession that he has not filed taxes since 1994, he has not completed a balance sheet or profit-and-loss statement since that time, and he did not list on deposit slips which jobs the monies came from. *Id.* at 67–77.

34. *Bankruptcy Petition Disclosures & the Debtor's Failure to Provide an Explanation:*

Finally, the Plaintiff contends that the Debtor knowingly and fraudulently made false oaths and accounts in violation of § 727(a)(4)(A) of the Code. In addition, the Creditor argues that the Debtor has failed to adequately account for the dissipation of his assets and income over the past five years, in violation of 11 U.S.C. § 727(a)(5).

The Plaintiff sets out a number of examples that, it claims, are indicative of the Debtor's false oaths and accounts. For example, Clean Cut notes the Debtor: (1) did not include the marital home on Schedule A; (2) misstated the balance in his checking account on Schedule B and failed to list Century Tree as an asset; (3) did not disclose all of his personal property; (4) failed to include the IRS as a creditor; (5) misrepresented his income on Schedule I and on the Statement of Financial Affairs; (6) failed to disclose the transfer of his equipment and phone numbers to Rivera; (7) did not list the name of his tax attorney on the Statement of Financial Affairs; and (8) has not shown what happened to the proceeds from the sale of the Gages Lake property.

In response, the Debtor simply denies the Plaintiff's allegations. For example, the Debtor in conclusory fashion argues that Clean Cut's allegations of violation of § 727(a)(4) are unfounded and that the Creditor was not able to prove that the Debtor made an oath knowingly and fraudulently, nor that the oath was related to a material fact. *See* Debtor's Amended Proposed Findings of Fact and Conclusions of Law at 18. However, the findings of fact

proposed by the Creditor are merely unwarranted conclusions and mischaracterizations of facts and is insufficient to guide the Court's analysis. *See id.* at 19.

35. Fact statements contained in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

■ The discharge provided to debtors in bankruptcy recognizes the Congressional intent of providing the bankrupt with a "fresh start." *Harman v. Brown (In re Brown)*, 56 B.R. 63, 66 (Bankr. D.N.H.1985). Thus, 11 U.S.C. § 727(a) of the Bankruptcy Code must be construed strictly against the objecting creditor and liberally in favor of the debtor. *Id.* (citations omitted). However, a debtor's violation of any of the provisions of § 727 completely bars discharge. *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 552 (5th Cir.1987).

■ Pursuant to Bankruptcy Rule 4005, the plaintiff bears the burden of proving his objection to the debtor's discharge. Fed.R.Bankr.P. 4005. However, once a plaintiff has established that the acts complained of occurred, the burden of production shifts to the debtor who must then come forward with a credible explanation of his actions. *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983).

### A. 11 U.S.C. § 727(a)(2)(A)

Clean Cut alleges that the Debtor's transfer of his business accounts and equipment to Tony Rivera just after the Creditor had obtained a judgment against him in state court is a violation of § 727(a)(2)(A) of the Bankruptcy Code. That provision denies a debtor a discharge when the debtor, within one year before his petition is filed, transfers or conceals property owned by him that would have become property of the estate and does so with actual intent to hinder, delay, or defraud creditors. 11 U.S.C. § 727(a)(2)(A). Specifically, § 727(a)(2)(A) provides that discharge will be denied if: "(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-(A) property of the debtor, within one year before the date of the filing of the petition." *Id.*

■ Under § 727(a)(2)(A), an objection to discharge will be sustained if the objecting party alleges and ultimately proves the following elements: (1) the debtor transferred or concealed property; (2) belonging to the estate; (3) within one year of filing the petition; (4) with the intent to hinder, delay, or defraud a creditor of the estate. *Id.; Community Bank of Homewood-Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 926 (Bankr.N.D.Ill. 1992) (citation omitted); *Groupe v. Braun (In re Braun)*, 98 B.R. 382, 385 (Bankr. N.D.Ill.1989) (citations omitted). Although the ultimate burden of persuasion is on the creditor objecting to the discharge, the debtor cannot prevail if after the creditor has made a prima facie case they are unable to offer credible evidence. *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 273 (9th Cir. BAP 1990), citing *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985). Transfer or concealment may occur even if creditors are not harmed by it. *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 968 (7th Cir.1999).

■ In the present action, the first three elements necessary for an objection to discharge are not substantially disputed. The Debtor filed his bankruptcy petition on August 20, 2001. He transferred property belonging to him in February of 2001,

within one year of the filing date. Thus, the only genuinely disputed issue under § 727(a)(2)(A) concerns the fourth element, whether the Debtor transferred the property with wrongful intent.

■■■ Actual intent to hinder, delay, or defraud a creditor is required under § 727(a)(2)(A). *Bailey*, 145 B.R. at 926 (citations omitted); *Braun*, 98 B.R. at 385. However, since debtors rarely declare their purpose to defraud their creditors, intent may be proved by circumstantial evidence or by inferences drawn from a debtor's course of conduct. *Olivier*, 819 F.2d at 553 ("[T]hose who transfer property with [a fraudulent] intent may be reluctant to disclose their motivation ... therefore, courts have held that the intent to frustrate creditors can be inferred from conduct."); *Farmers Coop. Ass'n of Talmage, Kansas v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982) ("Subsequent conduct is often probative of one's intent on a prior occasion."); *Sacklow v. Vecchione (In re Vecchione)*, 407 F.Supp. 609, 615 (E.D.N.Y.1976) ("Persons whose intention it is to shield their assets from creditor attack ... rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct."); *Bailey*, 145 B.R. at 926–27 (citation omitted); *Braun*, 98 B.R. at 385 (citation omitted). Courts must deduce fraudulent intent by examining the totality of facts and circumstances surrounding the transaction in question. *Rogers v. Boba (In re Boba)*, 280 B.R. 430, 435 (Bankr.N.D.Ill.2002); *Bailey*, 145 B.R. at 926–27 (citation omitted); *Filmar, Inc. v. White (In re White)*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986) (citation omitted). Finally, courts are generally reluctant to accept a debtor's own "self-serving statement of his intent as the best evidence of that intent." *Aubrey*, 111 B.R. at 273, quoting *Devers*, 759 F.2d at 754.

■■ Clean Cut also argues that the Debtor's transfer of his interest in the Dartmoor Drive property on February 6, 1998, and its subsequent refinancing on January 29, 2001, constitutes a continuing concealment done with the intention of defrauding or hindering creditors. Section 727(a)(2)(A) addresses concealment or transfer of property taking place only within a year before bankruptcy. However, "concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy and, therefore, such concealment is within the reach of § 727(a)(2)(A)." *Olivier*, 819 F.2d at 555. *See also McNichols v. Shala (In re Shala)*, 251 B.R. 710, 714 (N.D.Ill.2000) ("[T]he doctrine of continuing concealment comes into play where a debtor has transferred property more than one year before the bankruptcy filing but has retained a secret interest in the property that has continued into the 12–month immediate-pre-bankruptcy period.").

■■■ Even if the debtor transfers legal title, his continued use of the property in question is sufficient to constitute a continuing concealment. *Olivier*, 819 F.2d at 553 (citation omitted); *Friedell v. Kauffman (In re Kauffman)*, 675 F.2d 127, 128 (7th Cir.1981). In examining a debtor's use of a house after he has transferred legal title, courts consider such factors as whether the debtor is living in the house and whether he pays taxes and insurance on the property. *Id.* In cases in which the creditor can establish that the debtor retained either control or an equitable interest in the property, courts have denied discharge under the doctrine of continuing concealment. *Olivier*, 819 F.2d at 553.

■■■■ With respect to the intent element of § 727(a)(2)(A), the "retention of

the use of transferred property very strongly indicates a fraudulent motive underlying the transfer." *EFA Acceptance Corp. v. Cadarette (In re Cadarette)*, 601 F.2d 648, 651 (2nd Cir.1979), citing *Vecchione*, 407 F.Supp. at 618 & n. 6. Moreover, that property is transferred by the debtor to a relative is relevant. *Bailey*, 145 B.R. at 927 (citation omitted). "While the fact that a transfer is to a relative is not in and of itself sufficient to lead a court to find actual fraud, such a transfer in conjunction with other circumstances, can support a finding of actual fraud, notwithstanding an absence of hard evidence of fraud." *Id.*

In this case, Clean Cut has offered credible evidence tending to show that the Debtor transferred an interest in his property to Tony Rivera within the year preceding the filing of the Debtor's petition with an intent to hinder, delay, or defraud the creditor. The Debtor knew that there was an outstanding judgment against him when he transferred the property in exchange for $25,000. Moreover, despite his claim that he reinvested the money by purchasing two other vehicles for use in his business, the Debtor, by his own admission, was not able to produce any documentation, other than his own handwritten statement, to establish where the funds went.

Plaintiff has also sufficiently established that the Debtor had an interest in the Dartmoor Drive property that he subsequently transferred to his wife and that such transfer constituted a continuing concealment in violation of § 727(a)(2)(A). Mrs. Costello purchased the house with proceeds from the sale of a piece of property given to both her and the Debtor by his parents. Further, although legal title to the property was solely in Mrs. Costello's name, the Debtor lives at the house on weekends when his wife is out of town, and he periodically gives his wife money for her living expenses. Finally, Mrs. Costello refinanced the house shortly after judgment was entered against the Debtor in January of 2001, and he signed a homestead waiver at that time.

Based on the totality of the facts and circumstances surrounding the transactions in question, this Court finds that Clean Cut has met its burden of showing that the Debtor knowingly and fraudulently, with the intent to hinder and delay, transferred and concealed his property within the year before the bankruptcy filing.

Judgment will enter against Defendant because the Plaintiff is entitled to judgment barring discharge under § 727(a)(2)(A).

## B. 11 U.S.C. § 727(a)(3)

The Plaintiff contends that the Debtor has also violated § 727(a)(3) by concealing, destroying, mutilating, falsifying, and failing to keep or preserve books and records pertaining to his business, without an adequate justification. The Debtor claims, in response, that his submission of bank statements and canceled checks for the years 1999, 2000, and 2001 provides a reasonable basis on which to determine his financial condition and therefore, he is not in violation of the provision.

The obligation to keep or preserve records reflecting a debtor's financial condition is imposed by § 727(a)(3), which authorizes the denial of discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information ... from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under all of the circumstances of the case...." 11 U.S.C. § 727(a)(3). Intent to defraud is

not an element of proof under § 727(a)(3). *Scott,* 172 F.3d at 969; *Bay State Milling Co. v. Martin (In re Martin),* 141 B.R. 986, 995 (Bankr.N.D.Ill.1992) (citation omitted); *Olson v. Potter (In re Potter),* 88 B.R. 843, 848 (Bankr.N.D.Ill.1988) (citation omitted).

▇▇▇ The overriding goal of § 727(a)(3) is "'to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs.'" *Scott,* 172 F.3d at 969, quoting *Cox v. Lansdowne (In re Cox),* 904 F.2d 1399, 1401 (9th Cir.1990) (citation omitted). Ultimately, the statute insures that creditors receive adequate information so that they can "'ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *In Matter of Juzwiak (In re Juzwiak),* 89 F.3d 424, 427 (7th Cir.1996) (citations omitted).

▇▇▇ To meet the statutory goal of fair dealing, the provision authorizes a denial of discharge if the debtor "fails to act," unless such failure can be justified. 11 U.S.C. § 727(a)(3). This language imposes on the debtor an affirmative duty to create books and records that accurately document his business affairs. *Scott,* 172 F.3d at 969. *See also United States Fidelity & Guar. v. Delancey (In re Delancey),* 58 B.R. 762, 768 (Bankr.S.D.N.Y.1986) (citation omitted) (finding that courts must be "mindful of the debtor's obligation ... to reveal, rather than conceal, the complete financial picture.... 'Complete disclosure is the touchstone.'"). If disclosure of a debtor's financial condition cannot be accomplished without the maintenance of books and records, then the absence of such books and records constitutes a "failure to act" under the Bankruptcy Code. *Neugebauer v. Senese (In re Senese),* 245 B.R. 565, 576 (Bankr.N.D.Ill.2000) (citation omitted).

▇▇▇ party alleging a violation under Bankruptcy Code § 727(a)(3) has the initial burden of proving that the books and records are inadequate. *Leverage Leasing Corp. v. Reitz (In re Reitz),* 69 B.R. 192, 197 (N.D.Ill.1986); *Calisoff v. Calisoff (In re Calisoff),* 92 B.R. 346, 356 (Bankr.N.D.Ill.1988). However, once the objecting creditor has demonstrated that the debtor's records are inadequate, the burden of production shifts to the debtor to justify the lack of adequate records under the particular circumstances. *Reitz,* 69 B.R. at 197 (citation omitted); *Bailey,* 145 B.R. at 924.

[19–21] ▇▇▇ a debtor's books and records are adequate, as well as whether the debtor's failure to keep such documents is justified, are questions of fact. *Potter,* 88 B.R. at 848. The Court has broad discretion in deciding whether the books and records of the debtor are sufficient to meet the requirements of § 727(a)(3). *Seidle v. Escobar (In re Escobar),* 53 B.R. 382, 384 (Bankr.S.D.Fla. 1985); *Harman v. Brown (In re Brown),* 56 B.R. 63, 66 (Bankr.D.N.H.1985) (citations omitted). The sufficiency of a debtor's books and records must be decided on a case–by–case basis. *Bailey,* 145 B.R. at 924. Among the factors that a court may consider in making a determination as to the adequacy of the debtor's records are the size, complexity, and nature of the debtor's business; his educational background and level of sophistication; his experience and business acumen; and his personal financial structure. *Spiezio v. Vitek (In re Vitek),* 271 B.R. 551, 558 (Bankr. S.D.Ohio 2001) (citations omitted); *State of Illinois v. Volpert (In re Volpert),* 175 B.R. 247, 265 (Bankr.N.D.Ill.1994), citing *Bailey,* 145 B.R. at 924 & *Calisoff,* 92 B.R. at 356; *Potter,* 88 B.R. at 848.

As a general rule, a debtor's books and records are adequate if they allow both creditors and the court to track the debtor's financial dealings. *Potter*, 88 B.R. at 848. The debtor need not maintain any particular types of records. *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 885 (6th Cir. BAP 1999) (finding that § 727(a)(3) is not restricted to a debtor's tax returns, but encompasses any records that can allow creditors to obtain a complete picture of the debtor's financial situation); *Vitek*, 271 B.R. at 558; *Delancey*, 58 B.R. at 768 (citations omitted) (noting that the statutory provision does not require books and records to be kept in any specific form). Nor must records be kept in perfect condition. *Vitek*, 271 B.R. at 558. Rather, the adequacy of the books and records depends on whether they can be used to determine the debtor's past and current financial condition with substantial accuracy and completeness. *Strbac*, 235 B.R. at 885 (citation omitted); *Reitz*, 69 B.R. at 197 (citations omitted).

Finally, the burden is on the debtor to systematically arrange and reconstruct his financial affairs. *Union Planters Bank v. Connors*, 254 B.R. 230, 235–36 (Bankr.S.D.Ill.2000). "Creditors are not required to 'sift through documents and attempt to reconstruct the flow of the debtor's assets.'" *Scott*, 172 F.3d at 969, quoting *Juzwiak*, 89 F.3d at 429 (noting that "a debtor cannot simply place sacks of records before the bankruptcy judge or trustee" and ask that he try to reconstruct the debtor's financial situation); *Connors*, 254 B.R. at 235–36. "Creditors should not be forced to undertake an independent investigation of a debtor's affairs; rather they have a right to be supplied with dependable information on which they can rely in tracing a debtor's financial history." *Connors*, 254 B.R. at 235–36.

In the case at bar, Clean Cut has shown that the records provided by the Debtor are wholly inadequate to allow the Plaintiff and this Court to ascertain his financial condition. The Debtor produced bank statements and canceled checks, and he testified that these documents were the only records that he kept throughout his operation of Century Tree. He did not maintain a ledger of accounts, never created a balance sheet or profit-and-loss statement, and failed to filed tax returns for twelve years. The records produced by the Debtor are incomplete and do not provide an accurate picture of his financial situation.

Further, the Debtor has not offered an explanation to justify the lack of adequate records under the particular circumstances. Instead, he merely suggests that his bank statements and canceled checks are sufficient to determine his financial condition. His only explanation as to the unavailability of other business records is that mice ate them. Finally, the Debtor has utterly failed to orderly arrange and reconstruct his financial affairs, requiring both the Plaintiff and the Court to sift through bank statements and canceled checks in an effort to trace the flow of his assets.

For all of these reasons, judgment will enter against the Defendant for violation of § 727(a)(3) of the Bankruptcy Code.

## C. 11 U.S.C. § 727(a)(4)

Plaintiff contends that the Debtor has knowingly and fraudulently made false oaths and accounts in both the Schedules and Statement of Affairs section of his bankruptcy petition, as well as in his testimony at trial, thus violating § 727(a)(4) of the Code. The Defendant argues that he completed all parts of his petition fully and accurately and that, accordingly, he has not violated § 727(a)(4).

Section 727(a)(4)(A) provides that the court may not grant a debtor a discharge if: "(4) the debtor knowingly and fraudulently, in or in connection with the case-(A) made a false oath or account...." 11 U.S.C. § 727(a)(4)(A). The burden of proof lies with the objecting creditor to establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud; and (5) the statement related to the bankruptcy case in a material way. *Bailey*, 145 B.R. at 926; *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991). Although the burden of proof rests on the creditor at all times, the debtor cannot prevail if he is unable to offer credible evidence after the plaintiff has established a prima facie case. *Sapru*, 127 B.R. at 316 (citation omitted).

The purpose of § 727(a)(4) is to ensure that the debtor provides dependable information to those who are interested in the administration of the bankruptcy estate. *Madonia v. Hasan (In re Hasan)*, 245 B.R. 550, 554 (Bankr.N.D.Ill.2000); *Brandt v. Carlson (In re Carlson)*, 231 B.R. 640, 655 (Bankr.N.D.Ill.1999). The debtor must disclose all ownership interests he holds in property. *Allard v. Hussan (In re Hussan)*, 56 B.R. 288, 292 (Bankr.E.D.Mich.1985). "'The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the [d]ebtor's hands during the period prior to his bankruptcy.'" *Id.*, quoting *Guardian Indus. Products, Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 807 (Bankr.D.Mass. 1981). It is not the debtor's responsibility to decide which assets are to be disclosed to creditors; rather, his job is simply to address each question and answer it accurately and completely. *Id.* (citation omitted).

The first thing that an objecting creditor must establish is that the Debtor made a statement under oath. Bankruptcy schedules and statements of financial affairs constitute statements under oath. *Northeast Fed. Credit Union v. Garcia (In re Garcia)*, 260 B.R. 622, 631 (Bankr.D.Conn.2001); *Senese*, 245 B.R. at 575 (finding that any statement made in a bankruptcy petition, schedule, or statement of financial affairs falls within the meaning of § 727(a)(4)(A)); *In re Bailey*, 53 B.R. 732, 735 (Bankr.W.D.Ky.1985) (noting that a false oath may consist of a false statement or omission in a debtor's schedules). In addition, testimony at a Federal Rule of Bankruptcy Procedure 2004 Examination is a statement under oath under § 727(a)(4). *Garcia*, 260 B.R. at 631.

A creditor must next show that the statements made by the debtor were false. Whether the debtor made a false oath within the meaning of § 727(a)(4) is a question of fact. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir.1987); *Bailey*, 145 B.R. at 926. Filing bankruptcy schedules with material misrepresentations or omissions to mislead creditors about the debtor's financial situation constitutes a false oath. *Britton Motor Serv., Inc. v. Krich (In re Krich)*, 97 B.R. 919, 923 (Bankr.N.D.Ill.1988) (citation omitted). Although not every single item need be scheduled and valued, "there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied." *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 360–61 (Bankr.N.D.Ill.2002) (citations omitted).

Further, a debtor cannot excise a false oath by making subsequent correc-

tions to his bankruptcy petition. *Bensenville Community Ctr. Union v. Bailey (In re Bailey),* 147 B.R. 157, 165 (Bankr. N.D.Ill.1992) (citation omitted) ("Subsequent voluntary disclosure through testimony or an amendment to the schedules cannot expunge the falsity of an oath."). Allowing a debtor to submit false schedules and then, on discovery, avoid the negative consequences of his dishonesty by amending those schedules "is contrary to the spirit of the law which aims to relieve honest debtors only." *Hussan,* 56 B.R. at 293. " 'The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive.' " *Rogers v. Boba (In re Boba),* 280 B.R. 430, 435–36 (Bankr.N.D.Ill.2002), quoting *Payne v. Wood,* 775 F.2d 202, 205 (7th Cir.1985); *Mazer v. United States,* 298 F.2d 579, 582 (7th Cir.1962).

▪ After the creditor has demonstrated that the debtor made false statements, he must establish that these statements were made knowingly and fraudulently. As in § 727(a)(2)(A), direct evidence of intent to defraud is seldom available. Fraudulent intent must be inferred from circumstantial evidence or by inferences based on a course of conduct. *Bailey,* 145 B.R. at 928; *Nat'l Post Office Mail Handlers, Watchmen, Messengers & Group Leaders v. Johnson (In re Johnson),* 139 B.R. 163, 169 (Bankr. E.D.Va.1992). Moreover, if a debtor's bankruptcy schedules and statements indicate that the debtor is recklessly indifferent to the truth, the objecting creditor does not have to offer any additional evidence of fraud. *In re Johnson,* 139 B.R. at 166 (citation omitted) (noting that courts recognize that a reckless indifference to the truth is "the functional equiv-

alent" of fraud); *Bailey,* 145 B.R. at 928 (citations omitted) ("The cumulative effect of a number of false oaths by the debtor with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth by the debtor."); *Calisoff v. Calisoff (In re Calisoff),* 92 B.R. 346, 355 (Bankr.N.D.Ill.1988).

▪ Finally, the creditor must show that the false statements made by the debtor relate materially to the bankruptcy case. A statement is considered material for purposes of § 727(a)(4) if it relates to the debtor's estate, involves the discovery of assets, or concerns the disposition of the debtor's property or his entitlement to discharge. *Williamson,* 828 F.2d at 251; *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir.1984) (citations omitted); *Netherton v. Baker (In re Baker),* 205 B.R. 125, 133 (Bankr.N.D.Ill.1997).

▪ The Debtor filed his bankruptcy Schedules and Statement of Financial Affairs with numerous material misrepresentations and omissions. He misstated his account balances and annual income figures. He also failed to disclose all of his property, assets, and income; to include the name of his tax attorney; to list the Internal Revenue Service as a creditor; and to account for the proceeds from either the sale of the Gages Lake property or the transfer of equipment to Rivera. Further, after signing an affidavit stating that he had no records other than those he turned over to the Plaintiff, the Debtor admitted under oath that he had folders a foot–and–a–half thick with cash invoices and receipts. The Debtor's subsequent amendments to his petition cannot "expunge the falsity of [his] oath." The cumulative effect of these misrepresentations and omissions establishes a pattern of reckless indifference to the truth by the Debtor. Accordingly, his discharge is

barred under § 727(a)(4), and he is denied discharge.

Judgment will enter against the Defendant because Plaintiff has proved that the Debtor/Defendant made false oaths and accounts within the meaning of § 727(a)(4)(A).

## D. 11 U.S.C. § 727(a)(5)

Finally, Clean Cut contends that the Debtor has failed adequately to account for the dissipation of his income and assets and has, thereby, violated § 727(a)(5) of the Bankruptcy Code. As the Debtor is seeking a discharge in bankruptcy, he has a duty to satisfactorily explain the loss of his assets. *See Seidle v. Escobar (In re Escobar)*, 53 B.R. 382, 388 (Bankr.S.D.Fla.1985). A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 999 (Bankr.N.D.Ill. 1992), quoting *Soft Sheen Products, Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 366 (Bankr.N.D.Ill.1988) (citation omitted).

Section 727(a)(5) provides that the court must deny a debtor a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge . . . any loss of assets or deficiency of assets to meet the debtor's liabilities . . ." 11 U.S.C. § 727(a)(5). Thus, a debtor can obtain a discharge unless he fails to provide a satisfactory explanation as to any loss or shortage of assets to meet his liabilities. *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr.N.D.Ill.1988).

Under § 727(a)(5), a bankruptcy court has " 'broad power to decline to grant a discharge . . . where the debtor does not adequately explain a shortage, loss, or disappearance of assets.' " *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir.1996),

quoting *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir.1983) (citations omitted). What constitutes a "satisfactory" explanation under the provision is left to the discretion of the court. *Potter*, 88 B.R. at 849. Whether a debtor provides a "satisfactory" explanation is a question of fact. *State of Illinois v. Volpert (In re Volpert)*, 175 B.R. 247, 264 (Bankr.N.D.Ill.1994) (citation omitted).

Courts are unconcerned with the sagacity of the debtor's disposition of income and assets rather, the focus of a court's inquiry are the completeness and truth of the debtor's explanation. *See D'Agnese*, 86 F.3d at 735. "To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *Martin*, 141 B.R. at 999 (citations omitted).

Although the explanation need not be far-reaching and comprehensive, it must consist of more than a "vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Potter*, 88 B.R. at 849, quoting *Baum v. Earl Millikin, Inc. (In re Baum)*, 359 F.2d 811, 814 (7th Cir. 1966). Specifically, the explanation must satisfy two criteria in order to be considered "satisfactory." *Bostrom*, 286 B.R. 352, 364–65. First, it must be substantiated by documentation. *Chalik*, 748 F.2d at 620; *Bostrom*, 286 B.R. 352, 364–65; *Scarsdale Nat'l Bank & Trust Co. v. Switzer (In re Switzer)*, 55 B.R. 991, 998 (Bankr.S.D.N.Y.1986) (citation omitted) ("The failure to offer any documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets will justify the denial of a discharge."). Second, the documentation provided must be adequate to "eliminate the need for the Court to speculate as to what happened to all the assets." *Bostrom*, 286 B.R. 352,

**902**

364–65. *See also Madonia v. Hasan (In re Hasan),* 245 B.R. 550, 555 (Bankr.N.D.Ill. 2000) (citation omitted) (noting that the debtor's explanation must be supported by sufficient documentation to corroborate its veracity).

 Under § 727(a)(5), the creditor has the initial burden of identifying the assets at issue by demonstrating that the debtor possessed the assets at one time but that they are no longer available for creditors. *Potter,* 88 B.R. at 849. After the creditor has provided some evidence of the disappearance of substantial assets, the burden then shifts to the debtor to provide a satisfactory explanation as to the losses or deficiencies. *Id.,* citing *Martin,* 698 F.2d at 887–88.

In this case, Clean Cut has met its initial burden of identifying substantial losses and deficiencies in assets. The Plaintiff has established that the Debtor transferred business equipment and accounts to Rivera, that he earned hundreds of thousands of dollars through the operation of his business throughout the 1990s, and that he transferred to his wife his interest in a home that he continues to use.

The Debtor, however, has not satisfactorily explained the loss and disappearance of these assets. He was unable to proffer any physical evidence or documentation to account for the whereabouts of either his income or the proceeds from the transfers of his property. Moreover, his testimony—at trial, during depositions, and throughout the course of his state court case—was inconsistent and self-serving. In short, the documentary and testimonial evidence offered by the Debtor constitutes a "vague, indefinite, and uncorroborated hodgepodge of financial transactions." Judgment will enter against Defendant because the Debtor/Defendant has failed to explain satisfactorily, within the meaning of § 727(a)(5), the loss and defi-

ciency of assets to meet his liabilities. Accordingly, the Debtor's discharge must be denied.

### *CONCLUSION*

Wherefore, judgment will separately enter against Defendant, and the automatic stay under 11 U.S.C. § 362 will be modified so all creditors may proceed against the Debtor/Defendant to permit assets not part of the bankruptcy estate.