**In re Tarek HASAN, Debtor.**

**Anthony Madonia, Plaintiff,**

**v.**

**Tarek Hasan, Defendant.**

**Bankruptcy No. 98–B–41158.
Adversary No. 99–A–00822.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 6, 2000.

Erica Crohn Minchella, Erica Crohn Minchella, Ltd., Schaumburg, IL, for Plaintiff.

LaRoma White, Chicago, IL, for Defendant.

Robert B. Katz, William S. Wigoda, Law Offices of William S. Wigoda, Ltd., Chicago, IL, trustees.

JACK B. SCHMETTERER, Bankruptcy Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COUNTS II AND III[1]

This Adversary proceeding relates to a petition filed by Debtor/defendant Tarek Hasan ("Hasan" or "Debtor" or "Defendant") under Chapter 7 of the Bankruptcy Code, Title 11 U.S.C. Plaintiff seeks to bar Defendant's discharge under 11 U.S.C. § 727(a)(4)(A) and 727(a)(5). Following entry of default against Defendant and prove-up under Counts II and III of the Complaint, the Court now makes and enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Hasan, commenced his Chapter 7 case by filing a joint petition with his wife on December 23, 1998.

2. Plaintiff Anthony Madonia is an attorney at law licensed to practice in Illinois. On August 21, 1996, Hasan filed in an Illinois state court his Verified Complaint for Injunctive and Other Relief ("Complaint") against Robert Lane ("Lane"), Brighton Imports, Inc. ("Brighton") and Madonia. Hasan verified that allegations made in that Complaint were true and correct.

3. On September 16, 1996, Madonia filed his Answer and Affirmative Defenses to the Complaint (the Answer). Hasan filed his response to Madonia's affirmative defenses on October 11, 1996.

4. On the same date that Complaint was filed, Hasan filed an Emergency Motion for Temporary Retraining Order ("Motion for TRO").

5. The Motion for TRO alleged substantially identical facts as the Complaint. By way of the Motion for TRO, Hasan sought to enjoin Madonia from "harassing, threatening or personally contacting" both Hasan and attorney Stone and from "tampering with, altering, destroying or in any manner dealing with (Brighton's) corporate books, documents, business records, inventory lists, bank statement, cancelled checks, Small Business Association Loan documents, and any other document relating to the business activities of these Defendants."

6. On April 23, 1997, with discovery still outstanding, Hasan voluntarily dismissed his action pursuant to 735 ILCS § 5/2–1009.

7. On March 5, 1998, in the Illinois court case, Madonia obtained an "Order of Default" against Hasan pursuant to Illinois Supreme Court Rules 137 and 219(e) fixing a sanction in the amount of $26,454 ("Order") all for filing numerous pleadings which were found to be false and for failing to respond to discovery which remained outstanding. That sanction was based on attorneys fees and costs incurred by Madonia in defending the action brought by Hasan, and the Order established a debt due Madonia from Hasan.

8. Apart from his mortgage debt due to Norwest Mortgage Inc., which was fully satisfied by foreclosure on property securing that debt, Hasan owed about $10,000 to creditors plus his debt of $26,454 due to Madonia.

9. Hasan's Chapter 7 bankruptcy was filed on December 23, 1998. On May 12, 1999, he sat for his deposition under Rule 2004 F.R.Bankr.P. at which time he gave his testimony under oath stating in pertinent part:

  A. That he had owned a 12–unit building that had been sold two years

---

1. Plaintiff's earlier prove-up of an action to bar dischargeability under 11 U.S.C. § 523(a)(6) in Count I provided unsuccessful, and pursuant to Findings and Conclusions entered November 30, 1999, judgement was entered in that Count for Defendant.

earlier: (Deposition transcript at page 12).

B. That he received about $100,000 net from proceeds of that building sale. (Deposition transcript at page 12, lines 20–21).

C. That the $100,000 for his investment in New Brighton Imports (the company regarding which his lawsuit against Madonia was based) came partly through $50,000 from his wife's father as a gift (Deposition transcript at page 15 line 24 and page 16 line 1) and the remaining $50,000 from his uncle, Nabeel Hasan, (See Exhibit A to Complaint, page 8, paragraph 29).

D. That the money owed to his uncle was not required to be paid back. (Deposition transcript at page 18, lines 14–24).

E. That in approximately January, 1995 he invested $25,000 of his own money in New Brighton, which sum was paid back to him. (Deposition transcript at page 73, lines 18–24 and page 74 lines, 12–13).

F. That his $25,000 investment was not from proceeds of sale of the 12–unit building. (Deposition transcript at page 74 lines 15–17).

G. That he was out of work for six months to a year (Deposition transcript at page 28, lines 17–24, page 29, line 1).

10. Hasan's bankruptcy petition indicated that when he filed in bankruptcy, he was a salesperson for Brighton Automotive, his uncle's company (see Deposition transcript at page 27, lines 20–23).

11. The Debtor's Statement of Financial Affairs indicated that he received income from Brighton Automotive in 1997 and 1998 and income from New Brighton in 1996 (See Statement of Financial Affairs, page 1, number 1).

12. Hasan's bankruptcy petition also indicated that when he filed his bankruptcy petition his wife was employed by Great Clips. His Statement of Financial Affairs indicates that he held that position only during 1998.

13. Hasan further testified at his deposition that his parents own the home that he and his wife live in, that his parents have owned that home for some time, and that Hasan pays them rent of $400 per month. (See Deposition transcript at page 26, lines 7–23).

14. Despite that deposition testimony given on May 12, 1999, his Schedule I filed earlier on January 14, 1999 indicated that Hasan's rent was then $800 per month. His Schedule I thereby overstated the monthly rent he paid by $400.

15. Hasan was asked to provide bank accounts for the two years prior to the filing of his bankruptcy petition to show how sums shown to have been his possession totaling $125,000 (Findings Nos. 9C, 9E, 9F) were spent or otherwise disposed of.

16. Despite that request made in the Deposition (Deposition transcript at page 14, lines 23–24, page 108, lines 10–13 and page 108 lines 17–19) and through correspondence with Debtor's counsel, no such documents were ever produced.

17. Debtor materially falsified his schedules, and he did not maintain records sufficient to permit a proper investigation of his financial transactions and potential assets, in that:

a. By not retaining and producing bank statements he failed to allow for an investigation of potential preferences for payments made with the $125,000 of funds which he had on hand within two years of the filing of the bankruptcy;

b. By not producing bank statements he failed to allow for an investigation of any funds that still may remain on hand;

c. By falsifying and exaggerating his rent, he failed to disclose that he had at least $400 more in disposable income available each month for payment to creditors, so as to allow the U.S. Trustee or the Court to make a determination of the propriety of the dismissal of the case

under § 707(b) of the Bankruptcy Code (11 U.S.C. 707(b)) or possible conversion of the case to one under Chapter 13.

18. The Debtor has knowingly and fraudulently, in connection with his case made at least one false oath, namely the schedule falsely claiming that he paid $800 in monthly rent when he actually paid only $400 per month.

19. Fact statements in the Conclusions of Law will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

1. Jurisdiction lies over this Adversary proceeding pursuant to Title 28 U.S.C. § 1334, and the proceedings were referred by the District Court under Local District Court Rule 2.33(A). Any legal conclusion set forth in the Findings of Fact will stand as additional Conclusions of Law.

2. These are core proceedings pursuant to Title 28 U.S.C. § 157(b)(2)(I) and (J) in which a bankruptcy judge may enter final judgments. *Matter of Hallahan*, 936 F.2d 1496, 1502–07 (7th Cir.1991).

3. Venue is proper in this District pursuant to Title 28 U.S.C. § 1409(a).

4. Plaintiff brought this action pursuant to § 523(a)(6), § 727(a)(4) and § 727(a)(5) of the United States Bankruptcy Code, but judgment sought by Plaintiff under § 523(a)(6) in Count I has earlier been denied by order entered November 30, 1999.

### Debtor's False Oath in Pleading Under § 727(a)(4)(A)—Count II

5. Section 727(a)(4) of the Bankruptcy Code, Title 11 U.S.C. provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—... (4) the debtor knowingly and fraudulently, in or in connection with the case makes a false oath or account ...

6. The purpose of § 727(a)(4) is to ensure that dependable information is supplied to those interested in the administration of the bankruptcy estate so that they can rely upon it without having to make an extraordinary effort to dig out the true facts through examinations or investigations. *In re Carlson*, 231 B.R. 640 (Bankr. N.D.Ill.1999) *In re Syrtveit*, 105 B.R. 596, 596, 597 (Bankr.D.Mont.1989).

7. In order for the bankruptcy system to function, the trustee must be able to rely on information supplied in a debtor's schedules and statement of affairs in the first instance as the primary resource for information regarding the Debtor's assets, liabilities, and financial affairs. *In re Carlson*, 231 B.R. 640 (Bankr. N.D.Ill.1999), *In re Yonkers*, 219 B.R. 227, 233.

8. Thwarting the purpose of § 727(a)(4) and in violation of his duties the Debtor Tarek Z. Hasan knowingly and fraudulently in connection with this case gave false oath as to his rental obligation each month, thereby hiding $400 per month from his income available to pay something to his creditors.

### Failure to Explain Loss of Assets Under 727(a)(5)—Count III

9. Section 727(a)(5) of the Bankruptcy Code provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—... (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

10. For purposes of determining whether the debtor's discharge should be denied for failing to explain the absence of assets, the debtor's explanations must consist of more than vague, indefinite, and uncorroborated reasons. To be satisfactory, the explanation must demonstrate that debtor has exhibited good faith in conducting his affairs and explaining loss of assets. *In re Bryson*, 187 B.R. 939, 956 (Bankr. N.D.Ill.1995).

11. Once Plaintiff presented evidence of the disappearance of substantial assets, the burden then shifted to Debtor

to explain those losses. See *In re Volpert,* 1994 WL 605894 (Bankr.N.D.Ill.1994); *In re Potter,* 88 B.R. at 849; *In re Martin,* 141 B.R. 986, 999 (Bankr.N.D.Ill.1992).

12. For a debtor's explanation of dissipation of assets to be "satisfactory" and preclude denial of discharge, it must be good enough to eliminate the need for speculations as to what happened to missing assets, and must be supported by sufficient documentation to corroborate the veracity of debtor's explanations. *In re Martin,* 145 B.R. 933 (Bankr.N.D.Ill.1992).

13. In violation of his obligations under § 727(a)(5), Debtor Tarek Z. Hazan failed to explain satisfactorily loss or deficiency in his assets, namely a total of $125,000 in funds described in the Findings of Fact that were available prior to his bankruptcy filing to meet his liabilities. In this regard, he failed to keep and produce records to show the disposition of those funds or locations of funds remaining, if any.

## CONCLUSION

WHEREFORE, by separate judgment orders, Defendant Tarek Z. Hasan will be denied his discharge under 11 U.S.C. § 727(a)(4)(A) and 727(a)(5).