In re Neva Maxine JONGSMA, Debtor.

No. 07–22012 JPK.

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

March 25, 2009.

Kenneth L. Fugate, Esq., Hobart, IN, for the debtor, Neva Maxine Jongsma.

Richard Vawter, Esq., Merrillville, IN, for the creditor, Jennifer Brooker.

*MEMORANDUM OF DECISION CONCERNING OBJECTION TO CONFIRMATION OF THE DEBTOR'S CHAPTER 13 PLAN*

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

On July 31, 2007, the debtor Neva Maxine Jongsma ("Jongsma") filed a Chapter 13 plan. On December 17, 2007, Jennifer Brooker ("Brooker") filed an objection to confirmation of that plan. This objection gives rise to a contested matter subject to the provisions of Fed.R.Bankr.P. 9014. The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and (b), and N.D.Ind.L.R. 200.1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## I. *RECORD BEFORE THE COURT*

Jongsma's Chapter 13 case was initiated by a petition filed on July 31, 2007. On that date, she also filed her Chapter 13 plan. Brooker filed her objection to confirmation of Jongsma's plan on December 17, 2007. As stated in docket record entry # 49, at a preliminary pre-trial conference held on February 4, 2008 with respect to Brooker's objection, the attorney for the Chapter 13 Trustee reported that Jongsma's Chapter 13 plan was confirmable upon resolution of the contested matter relating to the objection. An evidentiary hearing was held on June 6, 2008, and the evidentiary record established at that hearing was supplemented by an Agreed Motion to Supplement Record filed by the parties on September 4, 2008; this supplementation was approved by the court.

The parties respectively have filed timely memoranda of law in support of their respective positions.

The court takes judicial notice of the following, pursuant to Fed.R.Evid. 201:

1. Schedules A through J, filed by Jongsma on July 31, 2007;

2. Statement of Financial Affairs filed by Jongsma on July 31, 2007;

3. Chapter 13 Plan filed by Jongsma on July 31, 2007;

4. Amended Schedule A filed by Jongsma on September 18, 2007;

5. Amended Statement of Financial Affairs filed by Jongsma on September 18, 2007;

6. Amended Schedule F filed by Jongsma on October 15, 2007;

7. The docket record in case number 07–22012; and

8. The Claims Register in case number 07–22012, including the claims docketed on that register.

The record before the court is thus the facts established by the June 6, 2008 hearing; the Agreed Motion to Supplement Record; and the materials of which the court has taken judicial notice.

## II. *ISSUES PRESENTED*

Brooker's objection to confirmation of Jongsma's Chapter 13 plan asserts that the debtor has failed to establish that she has satisfied 11 U.S.C. § 1325(a)(3), 11 U.S.C. § 1325(a)(4), and 11 U.S.C. § 1325(a)(7) with respect to her Chapter 13 plan, and thus that her Chapter 13 plan cannot be confirmed.

In her memorandum in response to Brooker's memorandum, Jongsma contests Brooker's assertions that she has failed to satisfy the confirmation criteria of 11 U.S.C. §§ 1325(a)(3), 1325(a)(4) and 1325(a)(7). In addition, Jongsma contends that because Brooker has not filed a timely claim, Brooker lacks standing to contest confirmation of Jongsma's plan.

The court will address the following issues in the following order in subsequent sections of this Memorandum of Decision:

A. Brooker's standing;

B. Compliance of the plan with 11 U.S.C. § 1325(a)(4);

C. Compliance of the plan with 11 U.S.C. § 1325(a)(3); and

D. Compliance of the plan with 11 U.S.C. § 1325(a)(7).

## III. *FACTS ESTABLISHED BY THE RECORD*

This Chapter 13 case was initiated by a petition filed on July 31, 2007. On that date, Jongsma filed her initial Schedules and Statement of Financial Affairs. Schedule A disclosed that Jongsma had interests as a tenant by the entireties in property located at 3241 Atlanta Boulevard, Portage, Indiana. Schedule I included in the debtor's income the amount of $900.00, stated to be derived from "Income from Real Property". In line 13 of Schedule J, Jongsma included the amount of $865.00 as "rental property mortgage 5445 Independence" and "rental property 2691 Gibson" in the amount of $460.00. Schedule F designated "Jennifer & Clifford Brooker" as creditors; the nature of the indebtedness owed to them was described as "Partnership liability" in an amount designated as "Unknown". Schedule H designated Jennifer Brooker as a co-debtor. Section 10 of the Statement of Financial Affairs designated two transfers within the definition of that section, one to Kent Heating and one to J & S Services.

Amended Schedule A, filed on September 18, 2007, added two property interests to that stated in the original Schedule A: a time share in Club Regina in Cancun, Mexico, stated to be held by Jongsma as a joint tenant, with a stated value of $3,000.00; and a time share in DeSarrollo Marina Villarta in Acapulco, Mexico, stated to be held as a joint tenant with a designated value of $4,000.00. The Amended Statement of Financial Affairs—also filed on September 18, 2007—amended section 10 to include in designated transfers, properties located at 5445–47 Independence Avenue, Portage, Indiana and 2691 Gibson Street, Lake Station, Indiana, as transferred to Ken Jongsma in March of 2007. The following statement was included in section 10:

Properties were transferred so that a loan could be received in husband's name for repairs to the properties. Debtor did not qualify for the loan due to bad credit. Debtor received no value for the transfer.

Schedule C, as originally filed on the date of filing of the petition, has never been amended. That schedule, as originally filed, claims an exemption pursuant to I.C. § 34–55–10–2(c)(1) in the amount of $15,000.00 with respect to real property located at 3241 Atlanta Boulevard, Portage, Indiana. No exemption has ever been claimed by Jongsma with respect to the time share interests stated in Amended Schedule A, nor with respect to any other interests Jongsma may have held on the date of filing of the petition in other real property.

The Agreed Motion to Supplement Record filed by the parties on September 4, 2008 establishes that the property located at 5445/5447 Independence, Portage, Indiana was originally deeded to Neva M. Jongsma and Kenneth J. Jongsma, as tenants by the entireties; that a mortgage with respect to this property was effected by Neva M. Jongsma and Kenneth J. Jongsma, as mortgagors; that the underlying obligation which the foregoing mortgage secures is solely that of Kenneth J. Jongsma; and that Neva M. Jongsma and Kenneth J. Jongsma refinanced that property and received net proceeds from the refinancing of approximately $42,000.00.

The Agreed Motion also establishes that the property located at 2691 Gibson Street, Lake Station, Indiana, was originally deeded to Neva M. Jongsma and Kenneth J. Jongsma; that a mortgage on that property was effected by Neva M. Jongsma and Kenneth J. Jongsma; that the obligation secured by the foregoing mortgage is solely that of Kenneth J. Jongsma; and that Neva M. Jongsma and Kenneth J. Jongsma received net proceeds from a refinancing of $22,400.00 with respect to that property. No Schedule A filed by Jongsma in this case reflects her ownership interests in the properties located at 5445/5447 Independence, Portage, Indiana and 2691 Gibson Street, Lake Station, Indiana. Section 10 of the Amended Statement of Financial Affairs erroneously states that transfers of properties located at 5445/5447 Independence Avenue, Portage, Indiana and at 2691 Gibson Street, Lake Station, Indiana were made to Ken Jongsma. As made clear by the Agreed Motion to Supplement Record, no transfer of any interests in those properties was ever made to Ken Jongsma; rather, transfers of interests in those properties "as security" were made within the two years immediately preceding the filing of the petition initiating this Chapter 13 case by Neva Jongsma to Countrywide Mortgage and to GMAC Mortgage, with respect to the mortgages provided to those respective creditors as part of refinancings with respect to both of those properties.

Both the original Schedule F and the Amended Schedule F filed by Jongsma fail to specifically delineate by whom the debts listed in those schedules are owed.[1]

The claims register discloses two joint debts, based upon the documentation provided by the claim filing creditors in support of their claims: GMAC, which filed claim # 1 in the amount of $23,234.39 as a secured claim; and Chase Bank USA, N.A., which filed claim # 2 in the amount of $329.85.[2]

At the evidentiary hearing held on June 6, 2008, the testimony of Jongsma established that her bankruptcy attorney, Kenneth Fugate, personally discussed the information stated in the original Schedules and Statement of Financial Affairs with Jongsma, and that Jongsma personally reviewed those documents and signed them under the penalties of perjury as being correct. With respect to the properties located at 5445/5447 Independence, Portage, Indiana and at 2691 Gibson Street, Lake Station, Indiana, Jongsma testified that it was her understanding that the properties had been taken out of her name as a part of the refinancing transactions relating to those properties because of the impairment of her credit as a result of a failed business venture. Thus, it was her testimony at the June 6, 2008 hearing that she believed in good faith that she no longer held an ownership interest in these properties at the time of the filing of her Chapter 13 case. In response to the fol-

1. The column in Schedule F which contains the vertical designation of "H, W, J, C" is intended to provide information as to the identity of every obligor with respect to a listed debt. Because this Chapter 13 case was filed singly by only one individual who was married at the time of filing, the foregoing vertical column should have included the designation "W" if the debt was solely that of the debtor and the designation "J" if the debt was that of the debtor and her husband. Because of the lack of these appropriate designations, the court cannot determine from Schedule F the extent to which designated creditors hold joint debts against both Neva and Kenneth Jongsma.

2. The determination of whether or not debts of a married debtor who files separately apart from his or her spouse are joint debts is necessary to establish the extent of the exemption provide by I.C. 34–55–10–2(c)(5) with respect to the plan confirmation criteria stated in 11 U.S.C. § 1325(a)(4).

lowing question by her counsel at the hearing: "Why did you tell me no [that there had been no transfers with respect to these properties] when there was actually a transfer", Jongsma's response was:

I was—when you asked me a transfer, I was thinking that you were asking me if I took anything of my husband's debt and transferred it onto me. That's what I thought you were indicating about transfer that I didn't—the houses are worth nothing. I mean, they're not even saleable. So when you—I didn't feel like I did anything as far as giving that property, because it was not saleable and in disrepair, because we hadn't really fixed them up by then.[3]

With respect to the time share interests disclosed in Amended Schedule A, Jongsma testified that she "had forgotten about them because they're not—they're not of value". [Trial Transcript, p. 19, lines 13–14]. Her testimony with respect to one time share interest was that she and her husband had not paid the maintenance fee on it for the years 2005, 2006 and 2007, with respect to which "we had to kind of let it go to the wayside" [Trial Transcript, p. 19, lines 18–19]. Her trial testimony was that she did not believe that she still owned one of the time shares [Trial Transcript, p. 19, lines 21–24], With respect to the other time share interest, Jongsma testified that she and her husband had held the interest for almost 20 years, and that the interest was for a 30–year term contract; that she had talked to several people about attempting to sell it, and had never encountered anyone who had been able to sell a similar time share interest; and that she had no objection to the Chapter 13 Trustee's attempts to sell it.

Jongsma did not disclose her interest in the two rental properties in Portage and Lake Station, or in the time shares, at her initial § 341 meeting of creditors [Trial Transcript, p. 22, lines 14–17].

In addition to other omissions from her Schedules and Statement of Financial Affairs, Jongsma omitted her daughter as a co-debtor in Schedule H [Trial Transcript, p. 31, lines 10–16].

For whatever it's worth, at the time the Portage and Lake Station rental properties were refinanced, the difference between their fair market value and the first mortgage indebtedness owed on each of them was significant. The value of the two time share interests was stated in a financial statement dated March 9, 2004 as $18,000.00 [Brooker's Trial Exhibit 1]; however, the values described in a financial statement submitted in March of 2004 has very little probative value with respect to the value of interests on the date of the filing of the petition on July 31, 2007.

To encapsulate the foregoing, Schedule A as originally filed by Jongsma did not include her interests in properties located at 5445/5447 Independence, Portage, Indiana or 2691 Gibson Street, Lake Station, Indiana. That Schedule also did not include her interests in two time shares.

---

**3.** The court recognizes that the testimony given by Jongsma at the June 6, 2008 hearing was based upon the incorrect premise that she had transferred her interests to the "rental" properties to her husband, apparently by quit claim deed, as part of the refinancing transactions. The record is now clear-no ownership interest of Jongsma in either of the "rental" properties was ever transferred by her to her husband. The amendment to the Statement of Financial Affairs effected on

September 18, 2007 was also based upon this premise. Neither the premise of Jongsma's testimony nor the premise in the amended Statement of Financial Affairs is correct. Jongsma in fact did make a transfer of an interest in real property which should have been disclosed in Section 10 of the Statement of Financial Affairs with respect to both rental properties, comprised of the granting of a mortgage in those properties to the refinancing creditors.

Amended Schedule A includes Jongsma's interests in the two time shares but still does not include her interests in the "rental" properties. While Schedule I discloses "Income from real property", there is no designation of the properties from which this income was derived. Schedule J does disclose that payments are being made with respect to the "rental" properties. While section 10 of the Amended Statement of Financial Affairs discloses transfers with respect to the "rental" properties, the disclosures are inaccurate.

Brooker has never filed a claim. Jongsma's Chapter 13 plan provides for a 28% dividend to unsecured claimants.

Whether stated in this section of the Memorandum of Decision, or in a subsequent section, the court determines that Jongsma's explanations for failure to disclose the time share interests in her initial filing to be disingenuous. The court determines that Jongsma's initial failure to disclose the time share interests was intentional, there is no evidence whatsoever that Jongsma had any notice that the interests had been terminated by any party, and Amended Schedule A discloses that Jongsma acknowledges that the interests in those time shares have value with respect to her bankruptcy estate. With respect to the rental properties, the court accepts Jongsma's testimony as to her confusion as to her continuing interests in those properties, given the manner in which the refinancings were accomplished. The court also notes that Schedules I and J do disclose interests in those properties which would be anticipated to lead to further investigation of those properties as being property of the estate.

## IV. ISSUES PRESENTED

The issues presented to the court in this contested matter are the following:

1. Does Brooker have standing to assert objections to confirmation of Jongsma's plan?

2. Does Jongsma's plan conform to the requirements of 11 U.S.C. § 1325(a)(4)?

3. Does Jongsma's plan conform to the requirements of 11 U.S.C. § 1325(a)(3)?

4. Does Jongsma's plan conform to the requirements of 11 U.S.C. § 1325(a)(7)?

## V. LEGAL ANALYSIS

### A. Brooker's Standing

Jongsma submits that because Brooker has failed to file a timely proof of claim, she has no standing to contest confirmation of the debtor's plan.

In a very ably presented argument, Jongsma's attorney sets forth her contentions as to Brooker's standing. As that presentation notes, and as the court's research confirms, reported decisions on this issue are few; reported decisions on this issue are split on their determinations; and there is no controlling precedent in the Seventh Circuit which *directly* addresses this issue.

We begin with 11 U.S.C. § 1324(a) which states:

(a) Except as provided in subsection (b) and after notice, the court shall hold a hearing on confirmation of the plan. A party in interest may object to confirmation of the plan.

The phrase "party in interest" is not a term defined by either the Bankruptcy Code or by the Federal Rules of Bankruptcy Procedure.

Jongsma presents to the court cases in which other courts have determined that the failure of a creditor to file a proof of claim precludes that creditor from having standing to assert *any* objection to confirmation of a debtor's Chapter 13 plan. Without specifically addressing each of the

cases cited by Jongsma, the court notes that none of those cases has any substantive analysis of the essentially conclusory resolution arrived at by those cases: that simply failing to file a claim precludes any standing for anyone to object to confirmation of a plan on any ground.

The concept of "standing" to raise an issue before a federal court is a concept which plays across the board of all litigation in federal courts, not just matters presented to a United States Bankruptcy Court. While there may be no cases of the United States Court of Appeals for the Seventh Circuit directly on point with respect to the issue of standing to raise confirmation objections to Chapter 13 plans, the Seventh Circuit has a very well stated body of case law on the issue of standing generally.

At its threshold, the concept of standing with respect to federal courts of the United States of America is derived from Section 2 of Article III of the Constitution, the recitation of which is unnecessary to this decision. As stated in *Tucker v. United States Department of Commerce*, 958 F.2d 1411, 1415 (7th Cir.1992), rehearing and rehearing en banc, denied April 29, 1992, the concept of Constitutional standing is as follows:

> Nor do the plaintiffs lack standing, in the Article III sense, to maintain this suit. All they need show in order to demonstrate an Article III case or controversy is, as we have emphasized recently, some probability of a tangible benefit from winning the suit. *Wooten v. Loshbough*, 951 F.2d 768, 769 (7th Cir.1991); *Morales v. Yeutter*, 952 F.2d 954, 956 (7th Cir.1991); *Harris v. Board of Governors*, 938 F.2d 720, 723 (7th Cir.1991); *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir.1991).

Brooker satisfies the test of Article III standing, in that there is some tangible benefit for her to deny confirmation of Jongsma's Chapter 13 plan, i.e., she avoids the potential for discharge of any indebtedness owed by Jongsma to her under the provisions of that plan. However, there is more to standing in the context raised by Jongsma in this case than Article III standing. As further stated in *Tucker, supra*, 958 F.2d 1411, 1416:

> But there are other senses of standing besides the Article III sense. One requires a plaintiff to be an *intended* as distinct from an accidental plaintiff. Not everyone hurt by a violation of a constitutional or statutory provision can sue to redress the violation. What we may call the "intended plaintiff" doctrine has two elements, each of which an aspiring plaintiff must satisfy. One, which in this case is critical, is that he must show that he is within the class of persons who have been given a right to *litigate* the violation. *Block v. Community Nutrition Institute*, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984); *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399–400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987); cf. *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). This branch of the intended plaintiff doctrine is what prevents a farmer from suing the Weather Bureau for failing to have the best forecasting equipment and methodology, even if he can show that he is injured by the failure and even though the failure if sufficiently egregious could be thought an arbitrary and capricious agency action violative of the Administrative Procedure Act, 5 U.S.C. § 551. No court would permit such a suit to go forward. It would say that the Administrative Procedure Act did not contemplate judicial review of *that* sort of agency action and therefore that the plaintiff had not been "aggrieved" by it within the meaning of 5 U.S.C. § 702.

We must distinguish the problem of standing presented by our hypothetical Weather Bureau case from the more familiar problem, involving the other part of the intended-plaintiff doctrine, that is presented when a plaintiff, however suitable to be a litigation standard bearer he might otherwise be, is not within the class of persons that Congress *intended to be benefited by* the statute under which he sues. *North Shore Gas Co. v. EPA, supra,* 930 F.2d at 1243–44, and other cases cited there; Stephen G. Breyer & Richard B. Stewart, *Administrative Law and Regulatory Policy: Problems, Text, and Cases* 1120 (2d ed.1985). The reason for denying standing in our hypothetical case would not be that the activities of the Weather Bureau are not intended for the benefit of our hypothetical farmer-they are. It would be that multitudinous lawsuits by victims of bad weather would be a lunatic method of trying to improve the accuracy of weather forecasting. Cf. *Clarke v. Securities Industry Ass'n, supra,* 479 U.S. at 399, 107 S.Ct. at 757; *Block v. Community Nutrition Institute, supra,* 467 U.S. at 348, 104 S.Ct. at 2455. We would say that the statutes establishing and governing the Weather Bureau should not be understood to confer *litigable* rights on persons complaining of being injured as a result of inaccurate weather forecasts, although those statutes were intended to *benefit* those persons.

As stated in *Matter of James Wilson Associates,* 965 F.2d 160, 168 (7th Cir.1992):

To have standing to invoke a statute you must be one of the persons whom the statute is intended to protect. *Tucker v. Department of Commerce,* 958 F.2d 1411, 1416 (7th Cir.1992).

The concept of "party in interest" is one that explicitly arises not only under 11 U.S.C. § 1324(a), but also in other provisions of the Bankruptcy Code. The most prominent of these provisions is 11 U.S.C. § 1109(b), which states that a "party in interest ... may raise and may appear and be heard on any issue in a case under [Chapter 11 of the United States Bankruptcy Code]". As stated in *FutureSource LLC v. Reuters Limited,* 312 F.3d 281, 284 (7th Cir.2002):

FutureSource was not a party to the bankruptcy proceeding, but it was what is called "a party in interest," which is "anyone holding a direct financial stake in the outcome of the [bankruptcy] case," 7 *Collier on Bankruptcy* ¶ 1109.01[1], p. 1109–4 (15th ed.2002), and as such it had a right to "raise and ... appear and be heard on any issue" in the case.

*See, In re UNR Industries, Inc.,* 71 B.R. 467 (Bankr.N.D.Ill.1987); *In re Hathaway Ranch Partnership,* 116 B.R. 208, 213 (Bankr.C.D.Cal.1990) ["I conclude that § 1109(b) should be construed expansively to allow any party that can demonstrate it has an interest in the bankruptcy case to appear and be heard. The standard is very different when a party wishes to be heard in an adversary proceeding (citation omitted)."]

In the context of this case, the touchstone for standing is whether Brooker has an interest in the case, apart from her filing of a proof of claim, to allow her to raise objections to confirmation of Jongsma's Chapter 13 plan. Defining it further, the United States Court of Appeals for the Seventh Circuit has determined that an individual or entity has standing to raise issues under a particular statute if they are within the scope of the parties whom a particular statute is intended to protect.

Let's turn first to Brooker's objection to confirmation of the plan based upon

11 U.S.C. § 1325(a)(4). That section states:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each *allowed unsecured claim* is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; (emphasis supplied)

The entities intended to be protected by this statute are those who have an "allowed unsecured claim". In order to have an "allowed claim", it is necessary to file a proof of claim; 11 U.S.C. § 502(a). Brooker, having never filed a claim in this case, is not within the scope of entities intended to be protected by 11 U.S.C. § 1325(a)(4), and thus she has no standing to raise any objection to confirmation based upon that provision.

█ Brooker's contentions with respect to 11 U.S.C. §§ 1325(a)(3) and 1325(a)(7) stand on a different footing. Brooker has been designated as both a creditor in Jongsma's Schedule F, and as a co-debtor in Jongsma's Schedule H. Thus, Jongsma has acknowledged an indebtedness directly to Brooker in some fashion by her inclusion of Brooker in Schedule F, and a potential right of contribution by Brooker by designation of her as a co-debtor in Schedule H. If Jongsma's Chapter 13 plan is confirmed and Jongsma completes payments under that plan, any claim that Brooker may have in any context against Jongsma will be discharged. Brooker is therefore directly affected by confirmation

of Jongsma's plan, and she therefore has standing—apart from her filing of a proof of claim—to challenge confirmation of the plan. The court entirely agrees with the analysis of this issue stated in *In re Jensen*, 369 B.R. 210, 229–231 (Bankr.E.D.Pa. 2007). Despite lacking standing to object to confirmation pursuant to 11 U.S.C. § 1325(a)(4), Brooker has standing to object to confirmation of the plan under the provisions of 11 U.S.C. § 1325(a)(3) and 11 U.S.C. § 1325(a)(7).

### B. *Objection to Confirmation Under 11 U.S.C. § 1325(a)(4)*

Based upon the preceding section, Brooker has no standing to object to confirmation of Jongsma's plan under the provisions of 11 U.S.C. § 1325(a)(4). Therefore, any objection by Brooker to confirmation of Jongsma's plan under this provision is denied.

### C. *Objection Pursuant to 11 U.S.C. § 1325(a)(3)*

Brooker asserts that Jongsma's plan cannot be confirmed pursuant to 11 U.S.C. § 1325(a)(3), which requires that the debtor establish that "the plan has been proposed in good faith and not by any means forbidden by law".

The United States Court of Appeals for the Seventh Circuit has stated standards for review of Chapter 13 plans under 11 U.S.C. § 1325(a)(3). The principal cases of the United States Court of Appeals for the Seventh Circuit in this context are *In re Rimgale*, 669 F.2d 426 (7th Cir.1982) and *In re Smith*, 848 F.2d 813 (7th Cir. 1988).[4]

---

**4.** Jongsma's memorandum of law refers to the case of *In re Schaitz*, 913 F.2d 452 (7th Cir.1990). As stated in the very last sentence of that opinion:

> We reserve for future consideration—whether in a subsequent appeal in this case or in another case—what we have been at pains to emphasize is the difficult question,

unanswered in this circuit, of the precise meaning of that term ["good faith"] under chapter 13.

913 F.2d 452, 456. *Schaitz*, declining to substantively address the issue at all, has no precedential value with respect to 11 U.S.C. § 1325(a)(3).

*In re Rimgale, supra,* was decided at a time when courts primarily viewed good faith concerning a plan in the context of the debtor's efforts to pay unsecured creditors. The case essentially adopts a "totality of circumstances" approach, and then lists five specific criteria which the Court deems to be included within an evaluation under that test. The court notes the following with respect to the *Rimgale* five-factor test:

1. The first standard: "Does the proposed plan state Rimgale's secured and unsecured debts accurately" [669 F.2d 426, 432], misperceives the nature of a Chapter 13 plan. The new debtor states secured and unsecured debts accurately in schedules filed in the case, and the treatment of creditors in a Chapter 13 plan is merely an extension of the creditors disclosed in the initial schedules.

2. The second test of *Rimgale:* "Does it state Rimgale's expenses accurately" [669 F.2d 426, 432], has nothing whatever to do with the provisions of a Chapter 13 plan. Expenses of a debtor are stated in Schedule J, and under BAPCPA in Official Form B-22C.

3. The third prong of *Rimgale:* "Is the percentage of repayment of unsecured claims correct" [669 F.2d 426, 432] refers to the confirmation requirement of 11 U.S.C. § 1325(a)(4). Whether or not a plan complies with § 1325(a)(4) depends upon the valuation of assets constituting property a Chapter 7 estate on the date of confirmation of a plan in Chapter 13, the expense of administration projected onto those values if those assets were administered in a Chapter 7, and the resulting distribution to unsecured creditors on the effective date of the plan in a Chapter 13 case, which is the date of confirmation of that plan. Adopting a standard that requires that a plan's proposed treatment be "correct" under § 1325(a)(4) ignores the seminal issue—how is whether or not the distribution proposed by a plan is correct to be made? In many instances, the issue of whether or not a plan complies with 11 U.S.C. § 1325(a)(4) requires an evidentiary or negotiated determination: to state that a criteria of "good faith" is that the plan must at its outset anticipate the result of these determinations is unrealistic and ignores that Chapter 13 process.

4. The fourth criteria: "If there are or have been deficiencies in the plan do the inaccuracies amount to an attempt to mislead the bankruptcy court" [669 F.2d 426, 432], remains viable under any context.

5. The fifth criteria: "Do the proposed payments indicate 'a fundamental fairness in dealing with one's creditors' (citation omitted)" has been, as will be seen, supplanted by amendments to the Bankruptcy Code.

The foregoing aside, *Rimgale* remains the law of the Seventh Circuit, flawed as it is.

*Rimgale* was followed by *In re Smith,* 848 F.2d 813 (7th Cir.1988). It must be first borne in mind that *In re Smith* was a very focused case, dealing only with a plan's treatment of nondischargeable debt. The entire analysis of that case is focused on the issue of good faith in relation to a nondischargeable debt. The critical holding of *Smith* is stated as follows at 848 F.2d 813, 821:

> Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith. 5 *Collier on Bankruptcy,* ¶ 1325.04[3] at 1325–17 (footnotes omitted). See *Sutliff, supra,* 79 B.R. at 153 ("The Code does not define good faith but legislative history does not reveal any Congressional intent to give it a different meaning than it had historically.").

"The good faith requirement 'has long been the policing mechanism of bankruptcy courts....'" *Todd, supra,* 65 B.R. at 250–51 (quoting *In re Chase,* 43 B.R. 739, 745 (D.Md.1984)). The definition of good faith has historically not been limited to the debtor's accurately disclosing all material information on his plan and intending to fulfill it, but also to the factors *Rimgale* sets out, including the "debtor's motive in seeking Chapter 13 relief" and "circumstances under which debts were incurred." Thus, after BAFJA courts do and should continue to look at the circumstances under which a debt was incurred and whether that debt would be dischargeable in Chapter 7. See, e.g., *Chaffin, supra,* 816 F.2d at 1073–74 and 836 F.2d at 216; *Sutliff, supra,* 79 B.R. at 154–55; *Easley,* 72 B.R. at 951–54; *Todd, supra,* 65 B.R. at 255–56.

### D.

Under the "totality of the circumstances" test, as read in light of BAFJA, the bankruptcy court erred in failing to consider the circumstances in which Smith's debts arose and the fact that they are otherwise nondischargeable.

Note again that *In re Smith* is focused upon the good faith of a Chapter 13 plan in relation to its treatment of a nondischargeable debt under Chapter 7. That issue is absent in this case.

■■■ Amendments to the Bankruptcy Code have impacted upon the "criteria" tests of both *In re Rimgale* and *In re Smith.* The impact of these amendments is extraordinarily well addressed in *In re Shafer,* 393 B.R. 655 (Bankr.W.D.Wis. 2008). This court totally endorses the analysis of the Honorable Robert D. Martin in that case. As stated in that decision, pre-petition conduct of the debtor is now

irrelevant in the determination of good faith under 11 U.S.C. § 1325(a)(3), and thus to the extent that Brooker contends that transfers of property or other activities by Jongsma prior to the filing of her petition is relevant under § 1325(a)(3), those contentions must fail. Whether or not the "percentage of repayment of unsecured claims [is] correct" has been negated by 11 U.S.C. § 1325(b). Thus, taking these two factors out of consideration, the test to determine "good faith" under 11 U.S.C. § 1325(a)(3), as stated in *Shafer, supra,* is the following:

> To determine the good faith of the debtors, the totality of the circumstances test is still good law, and it applies both to the filing of the petition and to filing of the plan. The *Schaitz* inquiry is the ultimate issue when considering the circumstances: are the debtors trying to pay their creditors, or are they trying to thwart them?

393 B.R. 655, 661.[5]

■■■ Brooker's assertions as to good faith under 11 U.S.C. § 1325(a)(3) are balled up with her assertions as to 11 U.S.C. § 1325(a)(4), which she has no standing to raise. Jongsma has proposed a plan which provides for payment of 28% of allowed unsecured claims. Based upon the record submitted to the court, the court is unable to say that Jongsma's plan seeks to "thwart" her creditors. Parenthetically, a consideration in this determination is that the Chapter 13 Trustee did not object to confirmation of the plan, which the court would anticipate would be the case if the Chapter 13 Trustee deemed the plan to seek to thwart the interests of unsecured creditors.

■■■ The principal issue upon which Brooker seeks to base her objections to

---

5. However, as previously stated, this court does not agree that *Schaitz, supra,* has any

applicability due to its expressly not addressing issues of "good faith".

confirmation is non-disclosure by Jongsma of certain interests in property in her filings of schedules and statement of affairs. It is completely possible for a debtor's pre-petition conduct and conduct in the actual filing of the case and disclosure of matters in relation to the initial filing of the case to satisfy 11 U.S.C. § 1325(a)(3) if—despite that conduct—the plan proposed by the debtor fairly deals with creditors. As stated in *In re Smith, supra,* 848 F.2d 813, 819:

> "Similarly, a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditor's claims." (citation omitted).

■ As the parties have acknowledged, the debtor bears the ultimate burden of proof as to satisfaction of the confirmation criteria of 11 U.S.C. § 1325(a). The totality of circumstances, including the plan's treatment of unsecured claimants,[6] establishes that the "plan has been proposed in good faith and not by any means forbidden by law", and that Brooker's objection pursuant to 11 U.S.C. § 1325(a)(3) cannot be sustained.

It is determined that Jongsma's plan conforms to 11 U.S.C. § 1325(a)(3), and that Brooker's objection to confirmation of the plan as not complying with that section is denied.

### D. *Compliance of the Plan With 11 U.S.C. § 1325(a)(7)*

In order to confirm a plan under Chapter 13, the court must find that "the action of the debtor in filing the petition was in good faith". This specific provision of 11 U.S.C. § 1325(a) was added by BAPCPA, and did not appear as a confirmation standard prior to October 16, 2005. There is

very little law on the precise application of this section to confirmation of Chapter 13 plans.

While not directly on point, because it dealt with a dismissal "for cause" pursuant to 11 U.S.C. § 1307(c)—the decision of the United States Court of Appeals for the Seventh Circuit in *In re Love,* 957 F.2d 1350 (7th Cir.1992) is instructive. At the time that *Love* was decided, there was a debate in decided cases as to the overlap between 11 U.S.C. § 1325(a)(3)'s requirement that a plan be proposed in good faith and the nature of conduct of a debtor which could give rise for grounds for dismissal for "cause" under 11 U.S.C. § 1307(c). *Love* was the first case in the Seventh Circuit which dealt with a motion to dismiss under § 1307(c) for bad faith, as contrasted to an objection to confirmation of a plan based upon lack of good faith. In the court's view, the criteria stated in *In re Love* have viability with respect to the determination required under 11 U.S.C. § 1325(a)(7). The following recitation from *In re Love* is relevant to the court's determination:

### B. *Factors Considered Under the Totality of Circumstances Test*

Having already determined that good faith under Section 1307(c) should be determined by looking to the totality of circumstances, the next question becomes what factors are appropriately considered under this test. As mentioned above, this court has not previously reviewed a bankruptcy court's good faith finding under Section 1307(c) of the Bankruptcy Code. This court has, however, evaluated good faith determinations made under Section 1325(a) of the Bankruptcy Code, and in *Smith* this court emphasized the similarities between these two good faith inquiries. *Smith,* 848 F.2d at 816, n. 3. Indeed, the

---

**6.** Of which Brooker would have been one had she filed a claim.

same policy embodies the two good faith evaluations. *See id.* That is, one of the primary purposes of the good faith evaluation in both contexts is to "force[ ] the bankruptcy court to examine 'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter].... '" *See id.* at 818 (quoting *Rimgale,* 669 F.2d at 431). At base, this inquiry often comes down to a question of whether the filing is fundamentally fair. *See Schaitz,* 913 F.2d at 453 ("the most fundamental and encompassing [factor when evaluating good faith] is whether the debtor has dealt fairly with his creditors.") In other words, the focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions.

Bankruptcy courts have expressed some confusion and frustration with regard to the proper focus of this Chapter 13 good faith inquiry. *See, e.g., In re N.R. Guaranteed Retirement, Inc.,* 112 B.R. 263, 271–73 (Bankr.N.D.Ill.1990), *aff'd,* 119 B.R. 149 (N.D.Ill.1990). We realize that the standard of fundamental fairness does not provide a great deal of needed guidance. Unfortunately, however, we cannot completely alleviate the confusion and at the same time retain the advantages of the totality of circumstances test. This is because as our definition of good faith becomes more precise, the bankruptcy court has less discretion to weigh the evidence first hand in making good faith evaluations. In short, the downside of the totality of circumstances test is a degree of uncertainty.

One area of uncertainty is whether the good faith inquiry is an objective or a subjective inquiry. *Id.* at 271. The fact is, the good faith inquiry is both subjective and objective. That is, both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code are relevant to the good faith inquiry. Moreover, the same evidence is often relevant to both an objective and subjective showing of unfairness. For example, if a debtor lies in his statement of assets and debts and if as a result of these misstatements one creditor will be disproportionately disadvantaged, this indicates objective unfairness. This same evidence, however, when coupled with other evidence, may also indicate that the debtor filed bankruptcy to thwart payment to a particular creditor, thereby indicating a subjective intent to unfairly abuse the spirit of the Bankruptcy Code.

Keeping in mind that the focus of the inquiry is fundamental fairness, the following nonexhaustive list exemplifies some of the factors that are relevant when determining if a Chapter 13 petition was filed in good faith: the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; *and whether the debtor has been forthcoming with the bankruptcy court and the creditors. See In re King,* 126 B.R. 777, 781 (Bankr. N.D.Ill.1991) (involved good faith evaluation under 1307(c)); *In re McKissie,* 103 B.R. 189, 192 (Bankr.N.D.Ill.1989) (same). *See also Schaitz,* 913 F.2d at 455–56 (discussing factors relevant to the good faith determination under Sec-

tion 1325(a)); *Smith,* 848 F.2d at 817–18 (same); *Rimgale,* 669 F.2d at 432 (same). (emphasis supplied).

957 F.2d 1350, 1356–57.

As stated by *Love,* a focus of whether or not a petition has been filed in good faith is "whether the debtor has been forthcoming with the bankruptcy court and the creditors", 957 F.2d 1350, 1357. As further stated:

> For example, if a debtor lies in his statement of assets and debts and if as a result of these misstatements one creditor will be disproportionately disadvantaged this indicates objective unfairness.

957 F.2d 1350, 1357.

In *In re Love,* a critical focus of the presentation in the United States Bankruptcy Court; of the decision of the United States District Court in affirming the decision of the United States Bankruptcy Court; and in the decision of the United States Court of Appeals for the Seventh Circuit—was the accuracy of information provided to the court, creditors and the Chapter 13 Trustee in schedules filed by the debtor. While, admittedly, the accuracy of schedules and statements of affairs is one of several factors to be taken into consideration under the standard of "good faith" in the filing of a case, it is a critical factor. Although stated in the context of a Chapter 7 case, the need for accurate disclosure of information is equally necessary in a Chapter 13 case, and the court endorses the following analysis of the critical nature of disclosed information in bankruptcy filings, as stated in *In re Costello,* 299 B.R. 882, 899–900 (Bankr.N.D.Ill. 2003):

> Section 727(a)(4)(A) provides that the court may not grant a debtor a discharge if: "(4) the debtor knowingly and fraudulently, in or in connection with the case-(A) made a false oath or account...." 11 U.S.C. § 727(a)(4)(A). The burden of proof lies with the object-

ing creditor to establish five elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with intent to defraud; and (5) the statement related to the bankruptcy case in a material way. *Bailey,* 145 B.R. at 926; *Bank of India v. Sapru (In re Sapru),* 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991). Although the burden of proof rests on the creditor at all times, the debtor cannot prevail if he is unable to offer credible evidence after the plaintiff has established a prima facie case. *Sapru,* 127 B.R. at 316 (citation omitted).

The purpose of § 727(a)(4) is to ensure that the debtor provides dependable information to those who are interested in the administration of the bankruptcy estate. *Madonia v. Hasan (In re Hasan),* 245 B.R. 550, 554 (Bankr.N.D.Ill.2000); *Brandt v. Carlson (In re Carlson),* 231 B.R. 640, 655 (Bankr.N.D.Ill.1999). The debtor must disclose all ownership interests he holds in property. *Allard v. Hussan (In re Hussan),* 56 B.R. 288, 292 (Bankr.E.D.Mich.1985). " 'The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the [d]ebtor's hands during the period prior to his bankruptcy.' " *Id.,* quoting *Guardian Indus. Products, Inc. v. Diodati (In re Diodati),* 9 B.R. 804, 807 (Bankr.D.Mass.1981). It is not the debtor's responsibility to decide which assets are to be disclosed to creditors; rather, his job is simply to address each question and answer it accurately and completely. *Id.* (citation omitted).

The first thing that an objecting creditor must establish is that the Debtor made a statement under oath. Bankruptcy schedules and statements of financial affairs constitute statements under oath. *Northeast Fed. Credit Union v. Garcia*

*(In re Garcia)*, 260 B.R. 622, 631 (Bankr.D.Conn.2001); *Senese*, 245 B.R. at 575 (finding that any statement made in a bankruptcy petition, schedule, or statement of financial affairs falls within the meaning of § 727(a)(4)(A)); *In re Bailey*, 53 B.R. 732, 735 (Bankr.W.D.Ky. 1985) (noting that a false oath may consist of a false statement or omission in a debtor's schedules). In addition, testimony at a Federal Rule of Bankruptcy Procedure 2004 Examination is a statement under oath under § 727(a)(4). *Garcia*, 260 B.R. at 631. A creditor must next show that the statements made by the debtor were false. Whether the debtor made a false oath within the meaning of § 727(a)(4) is a question of fact. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987); *Bailey*, 145 B.R. at 926. Filing bankruptcy schedules with material misrepresentations or omissions to mislead creditors about the debtor's financial situation constitutes a false oath. *Britton Motor Serv., Inc. v. Krich (In re Krich)*, 97 B.R. 919, 923 (Bankr.N.D.Ill.1988) (citation omitted). Although not every single item need be scheduled and valued, "there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied." *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 360–61 (Bankr.N.D.Ill.2002) (citations omitted). Further, a debtor cannot excise a false oath by making subsequent corrections to his bankruptcy petition. *Bensenville Community Ctr. Union v. Bailey (In re Bailey)*, 147 B.R. 157, 165 (Bankr. N.D.Ill.1992) (citation omitted) ("Subsequent voluntary disclosure through testimony or an amendment to the schedules cannot expunge the falsity of an oath."). Allowing a debtor to submit false schedules and then, on discovery, avoid the negative consequences of his dishonesty by amending those schedules "is con-trary to the spirit of the law which aims to relieve honest debtors only." *Hussan*, 56 B.R. at 293. " 'The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive.' " *Rogers v. Boba (In re Boba)*, 280 B.R. 430, 435–36 (Bankr. N.D.Ill.2002), quoting *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir.1985); *Mazer v. United States*, 298 F.2d 579, 582 (7th Cir.1962).

After the creditor has demonstrated that the debtor made false statements, he must establish that these statements were made knowingly and fraudulently. As in § 727(a)(2)(A), direct evidence of intent to defraud is seldom available. Fraudulent intent must be inferred from circumstantial evidence or by inferences based on a course of conduct. *Bailey*, 145 B.R. at 928; *Nat'l Post Office Mail Handlers, Watchmen, Messengers & Group Leaders v. Johnson (In re Johnson)*, 139 B.R. 163, 169 (Bankr. E.D.Va.1992). Moreover, if a debtor's bankruptcy schedules and statements indicate that the debtor is recklessly indifferent to the truth, the objecting creditor does not have to offer any additional evidence of fraud. *In re Johnson*, 139 B.R. at 166 (citation omitted) (noting that courts recognize that a reckless indifference to the truth is "the functional equivalent" of fraud); *Bailey*, 145 B.R. at 928 (citations omitted) ("The cumulative effect of a number of false oaths by the debtor with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth by the debtor."); *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 355 (Bankr.N.D.Ill.1988).

Finally, the creditor must show that the false statements made by the debtor

relate materially to the bankruptcy case. A statement is considered material for purposes of § 727(a)(4) if it relates to the debtor's estate, involves the discovery of assets, or concerns the disposition of the debtor's property or his entitlement to discharge. *Williamson*, 828 F.2d at 251; *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (citations omitted); *Netherton v. Baker (In re Baker)*, 205 B.R. 125, 133 (Bankr.N.D.Ill.1997).[7]

 While full and honest disclosure of property interests is only a factor to be considered in the analysis under 11 U.S.C. § 1325(a)(7), the court deems that factor to be the most critical factor in determining whether or not a petition was filed in good faith. The unjustified failure to disclose interests in property which comprises property of the bankruptcy estate under 11 U.S.C. § 541(a) taints a bankruptcy case from its beginning. Undetected, this failure results in a debtor's obtaining an unfair advantage over creditors, in violation of every standard for "good faith" enunciated by cases of the United States Court of Appeals for the Seventh Circuit. Detected, even if corrected, the court is confronted with determining whether or not the initial conduct by the debtor in tainting the case by nondisclosure constituted in essence an effort to "thwart" the debtor's creditors.

 In the instant case, it is without question that Jongsma's initial Schedule A failed to disclose interests in two time shares, and in two parcels of real estate, in which she held an interest with her husband as tenants by the entireties. Jongs-ma subsequently amended Schedule A to add the time share interests, but she has yet to amend Schedule A to add interests in two rental properties held as tenants by the entireties which clearly constitute property of her bankruptcy estate. In her memorandum, the debtor contends that the omission of these interests is immaterial, in that they could have been exempted and thus of no benefit to creditors in her case. First, these properties have yet to be disclosed in Schedule A. Second, Schedule C does not exempt these properties. Third, there are two joint creditors— GMAC, whose holding of an unsecured joint claim may be dependent upon bifurcation of that claim pursuant to 11 U.S.C. § 506(a); and Chase Bank, USA, N.A., whose claim on its fact is a joint claim— against whom no exemption will operate pursuant to I.C. 34-55-10-2(c)(5). The debtor's exemption rationale thus totally fails, and even if it were true, failure to disclose assets in a bankruptcy case on the basis that exemption causes those assets to be non-administrable is no excuse whatsoever for not disclosing the assets and asserting an appropriate exemption with respect to them. The failure to disclose assets potentially, and inexcusably denies creditors a fair distribution and fair treatment in a case.

 Much of the debtor's testimony at the June 6, 2008 hearing was devoted to her explanation as to why she failed to disclose her interests in the time shares and in the rental properties in her filings. The court finds the debtor's explanation to be totally disingenuous, particularly with

---

7. Again, the foregoing analysis was stated with respect to a proceeding to deny a discharge to a Chapter 7 debtor, potentially a much more serious circumstance than that presented by denying confirmation of a plan under 11 U.S.C. § 1325(a)(7). However, the necessity of being completely open and honest with the bankruptcy court, with the Chapter 13 Trustee, and most importantly with creditors as to a debtor's interests in property on the date of the filing of a bankruptcy petition is no less relevant in the context of confirmation of a Chapter 13 plan than it is in the context of considering whether a debtor's discharge in a Chapter 7 case should be entered.

respect to the time share interests. There is no evidence that either of the time share interests had been terminated, and in fact, the evidence is that one of the time share interests had ten years remaining in its use to the debtor and her husband. The court determines that debtor's failure to initially disclose the time share interests was intentional in order to preserve for the debtor and her husband the use of those assets, free of any consideration of, or control by, the Chapter 13 Trustee and creditors in relation to her Chapter 13 case. The amendment of the debtor's schedules in relation to these time share interests does not undo the effect of non-disclosure in the initial filing, based upon the court's determination of the reason for that non-disclosure. The "rental" properties are on a somewhat different footing, in that information was initially disclosed in Schedules I and J which provided inquiry notice as to potential interests of the debtor in these properties. But, even in this context, the provision of "inquiry notice" is not what is expected of debtors in dealing with this court, creditors, and trustees. The court expects schedules to be entirely accurate as to the nature of property potentially comprising a bankruptcy estate under the provisions of 11 U.S.C. § 541(a), and the court notes that the record in this case has yet to correctly disclose the nature of the debtor's interests in the "rental" properties.

The determination of whether or not a Chapter 13 plan complies with 11 U.S.C. § 1325(a)(7) depends upon the application of a "totality of circumstances" test. The most critical component of whether or not a case has been filed in good faith is the disclosure of information required by Schedules and Statements of Financial Affairs at the inception of the case. As stated in *In re Shafer, supra,* the critical determination under the "totality of circumstances" test is whether the debtors are attempting to pay their creditors or are they trying to thwart them. The court will give Jongsma the benefit of the doubt with respect to her interests in the "rental" properties and disclosure of those interests. But, based upon the record before the court, the court determines that Jongsma intentionally omitted the time share interests from disclosure in her initial filings, and that she intended to shield those time share interests from any possible incursion by creditors in her bankruptcy case.

Based upon the foregoing, the court determines that Booker's objection to confirmation of the debtor's plan pursuant to 11 U.S.C. § 1325(a)(7) should be sustained.

## VI. DETERMINATION

Based upon the foregoing, the court determines the following:

A. Brooker has no standing to object to confirmation of the debtor's Chapter 13 plan under the provisions of 11 U.S.C. § 1325(a)(4).

B. Brooker has standing to object to confirmation of the debtor's plan pursuant to the provisions of 11 U.S.C. § 1325(a)(3) and 11 U.S.C. § 1325(a)(7).

C. Brooker's objection to confirmation of Jongsma's Chapter 13 plan pursuant to the provisions of 11 U.S.C. § 1325(a)(3) is denied.

D. Brooker's objection to confirmation of Jongsma's plan pursuant to 11 U.S.C. § 1325(a)(7) is sustained.

E. Confirmation of Jongsma's Chapter 13 plan filed on July 31, 2007 is denied.